ALBERT WESLEY GOTTSCHALK

*v.*

CHARLES B. NOYES, Admr.

*Opinion filed December 22, 1906—Rehearing denied Feb. 8, 1907.*

1. MORTGAGES—*what facts do not amount to an extension of a mortgage.* An oral agreement by the mortgagee to extend time of payment of the mortgage, made with the grantee of the mortgaged premises, provided the latter would execute certain interest notes and pay the mortgagee's agent for renewal papers, will not constitute a binding extension, where, through the fault of such grantee, who took offense at the mortgagee's agent, the papers for the extension were never in fact executed.

2. PRACTICE—*when a defendant is not entitled to quash service and vacate default.* One who is made defendant to a foreclosure proceeding as the owner of the premises and in possession, and whose sole defense to the proceeding is an alleged agreement between himself and the mortgagee extending the time of payment, is not entitled to have the service upon other defendants quashed and their default vacated where they do not raise any question as to said service themselves.

3. SAME—*when cause is properly referred to master in chancery.* The issues in a proceeding to foreclose a mortgage are properly referred to a master in chancery by the court without first hearing evidence and declaring the rights of the parties, where the only issue of fact is whether the parties had agreed to an extension of the time of payment.

4. MASTERS IN CHANCERY—*when objection that master in chancery was not legally appointed is properly overruled.* An objection that the master in chancery to whom the issues in a foreclosure case were referred was not legally appointed because the form of the order prepared for the clerk was not signed by the ten judges of the court is properly overruled, where an order appointing the masters in chancery for such court was entered of record.

5. SAME—*item for computing the amount due is not illegal.* An item in the charges of the master in chancery of two dollars for computing the amount due from the defendant in a foreclosure proceeding is not covered by the fees for taking the testimony, and is not illegal.

6. SAME—*litigants should not be charged for unnecessary time spent by the master.* The purpose of the statute permitting courts in Cook county to allow to masters in chancery compensation for

examining questions referred to them and reporting conclusions is
to give the master fair remuneration for time necessarily spent in
that way, and litigants should not be required to pay for time unnec-
essarily spent by the master pondering over simple questions of fact.

7. SAME—*master's report is not intended to include testimony
and exhibits.* All that is required of a master in chancery is that
he report his conclusions as to the questions of fact, and it is not
intended that his report shall contain testimony or be expanded with
letters or other exhibits.

8. SAME—*objection to master's charges may be made after the
report is returned to court.* Objection to the master's charges may
be made after the report is returned to the court, and it is not neces-
sary such objection be made before the master and renewed as an
exception before the court and that a motion be entered to re-tax
the costs.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. THEODORE BRENTANO,
Judge presiding.

ALBERT WESLEY GOTTSCHALK, *pro se.*

HART J. FITZGERALD, (JOHN W. ELLIS, of counsel,) for
appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

William H. Noyes filed his bill in the superior court of
Cook county to foreclose a trust deed executed by Alma
Clarke and Henry W. Clarke, her husband, conveying a
part of a lot in Chicago to secure their note dated March 15,
1898, for $2000, payable to their own order five years after
date, with interest at six per cent to maturity and seven per
cent thereafter, payable September 15 and March 15 of each
year at the office of H. O. Stone & Co. in Chicago, and en-
dorsed by them in blank. Appellant, Albert Wesley Gotts-
chalk, was the owner of the premises and in possession, and

was one of the defendants. He answered the bill, setting up but one defense, which was, that default had not been made in the unpaid portion of the principal note and that the time of payment had been extended. The issue was referred to Hiram Barber, a master in chancery, to take the proofs and report the same to the court, with his conclusions of fact and law. The master took the evidence and reported the same with his conclusion that there had been no extension of the time of payment. He computed the amount due, and reported that there was due for principal $1700, for interest $97.52, solicitor's fees $90.12, and continuation of abstract $5. He charged statutory fees of $24.12 for taking the evidence and computing the amount due, and he asked for an allowance of $85 for examining the question in issue and reporting his conclusions thereon. The master had overruled objections of appellant to his conclusions, and by order of the court the objections stood as exceptions on the hearing. Appellant filed further objections before the court to each of the charges made by the master for services and to the right of the master to act as such, alleging that he had not been legally appointed. The court overruled the objections and exceptions, and on April 6, 1905, entered a decree in accordance with the report. At the same term, on April 27, 1905, appellant offered to William H. Noyes, in open court, $1814.19, which was the amount of the principal, and interest at six per cent due on the note at that date, without costs, which offer was refused. Appellant appealed to the Appellate Court for the First District and the cause was heard in the branch of that court. William H. Noyes having died, appellee, his personal representative, was substituted. The Branch Appellate Court affirmed the decree, and a further appeal was prosecuted to this court.

The facts as to the alleged extension of time of payment are as follows: Shortly before the maturity of the note, which would be on March 15, 1903, it was agreed between William H. Noyes and appellant that on said date appellant

should pay $100 on the principal and the interest due up to that time, and should semi-annually thereafter pay the interest at six per cent and $100 on the principal until the principal was reduced to $1500, and that there should be an extension of time of payment, but no time was agreed upon. On March 15, 1903, appellant paid the interest due and $100 on the principal at the office of H. O. Stone & Co. On September 15, 1903, he again paid the interest due and $100 on the principal. It was afterward agreed between the parties that the time of payment of the principal note should be extended for three years; that appellant should execute interest notes for the interest during the period of extension, payable semi-annually, and should pay with each interest note $100 on the principal until the principal should be reduced to $1500, and that he should pay H. O. Stone & Co. $15 for drawing renewal papers. A. W. Noyes, a son of W. H. Noyes, was acting as his agent, and on March 2, 1904, A. W. Noyes wrote to appellant that the papers had been taken to H. O. Stone & Co., and that he had advised that firm that appellant would pay $100 on the 15th and the interest due, and extension papers would be made for three years, with the understanding that $100 should be paid on the principal with each of the first two interest notes. In pursuance of the agreement appellant went to the office of H. O. Stone & Co. on March 15, 1904, and was referred to Mr. Sweitzer, who filled out a blank application for a new loan which entitled H. O. Stone & Co. to charge more than $15. Appellant refused to sign the application, and Sweitzer said that it was all off and he would not do anything for him. Appellant then paid to the cashier of H. O. Stone & Co. $100 on account of the principal, and interest to that date, as he had agreed to do. The same day appellant wrote A. W. Noyes that he had called at the office of H. O. Stone & Co. prepared to sign the extension papers but found that they were not ready, and that when they were ready they should be sent to his office, as he could not afford to waste

225—7

any time. On the same day H. O. Stone & Co. wrote appellant that they would have the papers drawn and ready for signature the next afternoon, and stating the agreement as it was, and appellant received the letter the next morning. On March 21, 1904, A. W. Noyes wrote appellant that on his return to his office he found a letter saying that the papers were at the office of H. O. Stone & Co., and he asked appellant to call there on or before the 26th to close the matter up. On March 23, 1904, appellant wrote to A. W. Noyes stating his complaints of the conduct of H. O. Stone & Co., and saying that he was ready, willing and able, and then offered, to sign the extension notes when produced at his office. He did not call at the office of H. O. Stone & Co. and the papers were not brought to his office. The agreement was not carried out, because of appellant's refusal, by the execution of interest notes and an extension of the time of payment, and on April 11, 1905, the foreclosure suit was begun.

The first agreement necessarily contemplated that there should be an extension of the principal note until it should be reduced to $1500, but no further time was agreed upon. That agreement was acted upon for one year and was then abrogated by the new one, by which there was to be an extension for three years from March 15, 1904, and appellant was to execute interest notes. He was not personally liable for the mortgage debt, and by this agreement was to become liable for the interest during the period of extension. That agreement was not carried out through no fault of William H. Noyes or A. W. Noyes. The agreement was that appellant should go to the office of H. O. Stone & Co. and execute the papers, and on account of the conduct of Sweitzer he became angry and refused to go to the office again and carry out the arrangement. The instructions of the holder of the note to H. O. Stone & Co. were in accordance with the agreement, but Sweitzer attempted to secure an application for a new loan which was not in accordance with

the instructions. In the subsequent letter written by Sweitzer on the same day there was some prevarication; but however irritating his conduct may have been, we regard the refusal of appellant to go to the office, which was within three blocks, as unreasonable. The negotiations fell through, as we think, through the fault of appellant, and there was no extension of the time of payment.

The objection that Hiram Barber was not legally appointed master in chancery was on the ground that the form of the order prepared for the clerk was not signed by the ten judges of the superior court. An order appointing the masters in chancery of that court was entered of record, and if the right of one of them to act as master in chancery could be raised in this way, the court was right in overruling the objection.

Alma Clarke and Henry W. Clarke, makers of the note, were defendants to the bill, and the return of the sheriff showed service upon them by leaving a copy for each of them at their usual place of abode, as provided by statute. Appellant moved to quash the service and vacate the default of said parties, and filed an affidavit that the Alma Clarke served was not the one who executed the note, and that her husband was not Henry W. Clarke. Whether the return of the sheriff was true or not did not in any way affect appellant or his defense to the foreclosure, and as they did not raise any question relating to the service upon them the court did not err in overruling the motion.

It is contended that the court erred in referring the cause to the master without first hearing the evidence and declaring the rights of the parties. The issue of fact was whether the parties had agreed to an extension, and the case was not one where an accounting was sought and the right to the account was in dispute. It was not error to refer the issue to the master.

Appellant complains that the decree recites that the court had jurisdiction of unknown owners. All that is said on

that subject is, that the court finds that it has jurisdiction over the parties and the subject matter, and there is no finding that there are unknown owners or that the court acquired jurisdiction of them. There is nothing in the record which indicates that there were any outstanding interests or unknown owners, and the complaint is groundless.

The decree was entered on April 6, 1905, and on April 27, 1905, appellant tendered in open court $1814.19, which was the amount of the principal note and interest thereon at six per cent. The amount tendered did not include all which was properly found due by the decree, and was insufficient.

The master certified that he had performed the following services:

*"Fees fixed by statute:*
  I have taken and reported 147½ folios of 100 words
    each, at 15 cents..............................$ 22.12
  I have computed amount due complainant...........    2.00
*Fees to be allowed by court:*
  I spent 1½ days in examining testimony, ½ day in examining pleadings, 3 days in preparing findings, ½ day in hearing objections.......................   85.00

$109.12"

He asked the court to allow that amount, and the court, against the objection of appellant, found that the master was entitled to the same. It is first objected that the two dollars for computing the amount due complainant was illegal and included within the charge for taking testimony. It was necessary to compute the amount due in addition to taking the testimony, and the charge was not illegal. The master spent five days in examining the testimony and pleadings, preparing his findings and hearing objections, and charged $85 for the time so spent. The purpose of the statute permitting courts in Cook county to allow to masters in chancery compensation for examining questions in issue referred to them and reporting conclusions thereon, is to give to the master fair remuneration for time necessarily and properly spent in that way. In this case the only question involved

was a very simple one of fact, and the report related to nothing else. Surely it was not necessary to spend one-half day examining pleadings to determine what the issue was, or one and one-half days in examining testimony to which the master had just listened, or three days preparing the finding as to the single question. All that is required of a master is to report his conclusions as to the questions of fact, and it is not intended that his report shall contain testimony or be expanded with letters or other exhibits. The material part of the report in this case is very brief, and the report consists, in the main, of testimony and exhibits which were already in the evidence returned to the court. The chancellor who finally heard the case and determined all the questions involved was necessarily required to understand the pleadings and the testimony and hear the arguments. No one would think for a moment that he would require five days for that purpose or more than a small fraction of that time. Litigants ought not to be charged with time unnecessarily spent in pondering over simple questions of fact, and for all the time necessarily spent in this case $25 is a liberal allowance. Appellee insists that appellant cannot have the ruling of the court reviewed because he did not file objections before the master and renew them as exceptions and enter a motion to re-tax costs. None of these things were necessary. The fees were only charged and asked for when the report was returned into court after the objections were overruled, and appellant had a right to make his objection then. The chancellor was able to determine from an inspection of the report what would be reasonable fees for considering the question and reporting the conclusions, and it was not necessary to produce evidence. The chancellor found and decreed that the charges made were reasonable, and we think erred in that conclusion.

The judgment of the Appellate Court is affirmed except as to the allowance of $85 to the master in chancery for services for which there is no statutory fee, and as to that allow-

ance the judgment is reversed. The cause is remanded to the superior court with directions to allow a fee of $25 for said services. The parties will each pay one-half the costs in this court.

*Affirmed in part, reversed in part and remanded.*