### Frank J. Smith et al., Plaintiffs in Error, v. Gus H. Bunge et al., Defendants in Error.

### Gen. No. 8,639.

Opinion filed September 20, 1933. Rehearing denied November 9, 1933.

CHARLES HUDSON and CHILTON P. WILSON, for plaintiffs in error.

FREDERICK C. HARBOUR and MAX MURDOCK, for defendant in error Downers Grove Investment Company.

C. A. CARLSON, CHARLES W. HADLEY and HARVEY T. FLETCHER, for other defendants in error.

GUSTAV H. BUNGE, *pro se.*

MR. JUSTICE HUFFMAN delivered the opinion of the court.

Bill of complaint was filed in this case by certain minority stockholders of the Downers Grove Investment Company, an Illinois corporation. It was directed against Gus H. Bunge, Mrs. F. M. Bunge, George H. Bunge, Mrs. George H. Bunge, Ernest E. Bunge, Charles Williston, C. J. Dunham, Burke Storage Company, Mason Real Estate Improvement Company, and the Downers Grove Investment Company. The bill alleges that the Downers Grove Investment Company, hereinafter termed the Investment Company, was organized under the laws of the State of Illinois, to act as agent for others in the purchase, sale, renting and

management of real estate, in operating insurance agencies, lending money on real estate mortgages or industrial or railroad bonds, or public service corporations or municipal or quasi municipal bonds, and dealing in such securities, and for no other purpose. Plaintiffs in error charge Gus H. Bunge, as president, and George H. Bunge, his son, Ernest E. Bunge, his brother, Charles Williston, and C. J. Dunham, as directors, with gross mismanagement of the Investment Company, in that defendants in error permitted Gus H. Bunge, George H. Bunge, Mason Real Estate Improvement Company (which is owned by Gus H. Bunge), and the Burke Storage Company (of which Gus H. Bunge is president and large stockholder) to withdraw large amounts of money from the funds of the Investment Company, for their own personal use and for the use of the said Real Estate Company and the said Storage Company; that such withdrawals were fraudulent and illegal, and not authorized either by statute or the charter of the Investment Company, and that the said defendants in error have refused to collect such accounts and indebtedness arising by way of such advancements. The bill further charges that due to this conduct of the defendants in error, the Investment Company has no funds with which to pay its debts and has no cash resources unless such accounts can be collected. The bill charges the defendant directors with conduct constituting gross and fraudulent mismanagement of the Investment Company, whereby it was in imminent danger of insolvency, if not already insolvent. It asks for an accounting between the Investment Company and the defendants in error; and for the appointment of a receiver to take charge of the affairs of the Investment Company to collect money due it from defendants in error; and for general relief.

Motion was made in this court by defendant in error, Burke Storage Company, that this suit be dismissed as

to it; which motion was taken for consideration with the entire cause, and the motion has been denied. Defendant in error, Gus H. Bunge, filed his motion to strike the brief and argument of plaintiffs in error because of scandalous and impertinent matter, which motion was taken with the case. While some of the statements contained in the brief and argument of plaintiffs in error might well have been omitted, and served no good purpose, yet, they are not deemed a sufficient violation of the rules of this court to warrant the granting of the motion.

The evidence shows that Gus H. Bunge organized the Investment Company and has been its president and in control of its affairs during its entire corporate existence. It appears that this corporation is without authority to buy and deal in real estate, and that it did not have authority to lend money except upon such securities as above set out in its charter. After the original organization of the Investment Company, the capitalization was increased in the amount of $100,000, by the issuance of 850 shares of the par value of $100 per share and 1,500 shares of the par value of $10 per share. Both the $100 stock and $10 stock, had the same voting power. Gus H. Bunge became a subscriber to 1,001 shares of the $10 stock, George H. Bunge to 374 shares of the $10 stock, and Gordon Bunge to 10 shares of such stock, making a total of 1,385 shares out of the 1,500. The balance of this stock went to divers other parties.

Gus H. Bunge was the owner of the Bunge subdivision in Downers Grove, and it appears that he and his family organized the Mason Real Estate Improvement Company to take title to his real estate holdings in said subdivision. He and his family are the sole owners of the corporation designated as the Mason Real Estate Improvement Company and constitute the officers and directors thereof. Gus H. Bunge mort-

gaged the said subdivision to the Investment Company for the sum of $35,000, and neither the principal or interest has been paid. Gus H. Bunge's private residence in Downers Grove is commonly referred to in this case as the "Big House." He conveyed this property to the Mason Real Estate Improvement Company, which company in turn conveyed it to the Investment Company for the consideration of $23,879.18, in November, 1929. Gus H. Bunge was president of both companies at that time. He continued to occupy this residence property after these transactions. On August 12, 1930, Gus H. Bunge directed V. J. Morton, then secretary of the Investment Company, to issue to his son, George H. Bunge, certificates for 855½ shares of stock in the Investment Company, also a deed for the "Big House," a deed for premises described as the "Tope House" and a deed for another tract described as the "Corner Lot"; and accept for the Investment Company in consideration of same, a conveyance of Gus H. Bunge's equity rights in a property called Bunge's Tivoli Theatre & Hotel Building, which building was then under mortgage for $200,000, and which was to be accepted by the Investment Company subject to the said mortgage. When Gus H. Bunge handed this memorandum to Morton with directions to carry out the same, Morton refused to do so unless authorized by the board of directors, and subsequently thereto, resigned as secretary without carrying out such instructions for Gus H. Bunge. It also appears in this transaction that Gus H. Bunge was to be credited on his personal account on the books of the Investment Company, with a credit of $55,000. The values that Mr. Bunge placed upon the credits and transfers that were to be made to him and to his said son, upon said memorandum, totaled $240,050.

It appears that following the resignation of the secretary Morton, the "Big House" was conveyed

by a deed from the Investment Company to George H. Bunge, son of Gus Bunge; that the deed was executed by Gus H. Bunge on behalf of the Investment Company and acknowledged before Gordon C. Bunge, as notary public. It appears that this act was not authorized by the board of directors and that no consideration was paid by George H. Bunge for the conveyance.

After the mortgage of Bunge's subdivision to the Investment Company for $35,000 was made, the equity of redemption in said property was conveyed through the Mason Real Estate Company to the Investment Company for the price of $38,115.97; and soon after this occurred, 11 lots in the subdivision were conveyed by the Investment Company to the Lord Lumber Company in payment of an account owed it by Gus H. Bunge individually, for materials furnished, in the building known as Bunge's Tivoli Theatre and Hotel. The consideration for the 11 lots was $18,315.50. It appears that this amount was charged against Gus H. Bunge upon the books of the Investment Company, but not paid, and that later, the same was charged off under the designation "suspense account."

The Mason Real Estate Company also sold to the Investment Company the so-called "Tope House," for $2,500, subject to a mortgage of $4,500, which mortgage loan the Investment Company had previously made to Gus H. Bunge. It appears that this "Tope House" was afterwards conveyed back to George H. Bunge without consideration, and that he held the same when the bill of complaint was filed herein.

The Mason Real Estate Company was incorporated for $100,000, of which Gus H. Bunge subscribed to $75,000, George H. Bunge, his son, to $23,500, and Gordon C. Bunge, his nephew, $500, making $99,000 of the capital stock of the company within the Bunge family. Two days after the said company was chartered, the above $35,000 loan was made by the Investment Com-

pany. The Mason Real Estate Company had no other office than that of Gus H. Bunge and the Investment Company.

Gus H. Bunge was president, manager, and director of the Burke Storage Company, and during such time the Storage Company borrowed from the Investment Company $75,000, of which no part of the principal or interest has been paid. The notes and bonds for this loan were pledged by the Investment Company and it has had to pay the interest thereon. In addition to this the Investment Company, at the instance of Gus H. Bunge, was caused to advance to the Burke Storage Company on its unsecured notes at one time, the sum of $15,000 and at another time the sum of $1,750, and at another time the sum of $4,558.53 on open account; all of which notes and open account have been pledged as security by the Investment Company.

It appears that one Angelo Masouris owed Gus H. Bunge $1,050 rent; that he owed the Burke Storage Company $1,504.85; that he owed on a real estate contract he had made with Gus H. Bunge, the sum of $1,675; and that in addition to these amounts he owed a note for $1,000, in which Gus H. Bunge was interested. Gus H. Bunge had the Investment Company buy from the said Masouris an $8,400 note, with which the foregoing accounts were paid. The above note was sold by Masouris to the Investment Company at par, plus accrued interest, and was signed by the Downers Grove Restaurant Company, Inc., by John Bahas and John Papas, as president and secretary, and purported to be secured by chattel mortgage on the furniture in said restaurant. This note was not paid and the furniture was sold at public auction by Gus H. Bunge and brought the total sum of $465.

Mr. Gus H. Bunge also mortgaged a property on Wabash avenue in the City of Chicago to the Investment Company for $10,000 of which the sum of $8,000 remains unpaid. It appears that Ernest E. Bunge, a

director and brother of Gus Bunge, borrowed from the Investment Company $3,500 upon land in the State of Minnesota, which loan is past due and unpaid, and which security has been pledged by the Investment Company.

When the ''Big House'' was conveyed to the Investment Company, it was conveyed subject to a mortgage of $10,000, which the Investment Company had previously loaned thereon to Gus H. Bunge. Including the amount of the mortgage, the consideration of the above transaction was fixed at $23,870.18, which sum was credited to the Mason Real Estate Company and drawn out. The ''suspense account'' of $18,315.50, appearing on the books of the Investment Company on account of the transfer by it of certain lots in Bunge's addition, to the Lord Lumber Company, to settle an account of Gus H. Bunge's with said Lumber Company for materials used in the Tivoli Theatre and Hotel Building, was recommended by the auditor to be charged back on the books of the Investment Company against Gus H. Bunge. The matter was referred to a committee, which committee did not report prior to the bringing of this action.

It appears that Gus H. Bunge on December 20, 1930, had an overdraft with the Investment Company of $25,686.46; that both E. E. Bunge and George H. Bunge are indebted to the Investment Company; that the Mason Real Estate Company and Burke Storage Company are likewise indebted in large sums; the Mason Real Estate Company on December 30, 1930, owed by open account the sum of $22,834.52; that the Burke Storage Company has never paid any of the principal or interest on its $75,000 loan.

It further appears that the Investment Company has no securities except such as are pledged as collateral for its own borrowings; that it was obliged to borrow $2,000 to pay upon the mortgage on its own office building; and that at the time of bringing this suit, the In-

vestment Company had no available assets other than the open accounts against Gus H. Bunge, the Mason Real Estate Company, the Burke Storage Company, George H. Bunge and E. E. Bunge.

Mr. Gus H. Bunge, E. E. Bunge, his brother, and George H. Bunge had so many personal and individual transactions with the Investment Company that to undertake to go into the same in any further detail would extend this opinion beyond reasonable limits.

Plaintiffs in error urge that the defendant directors are guilty of gross mismanagement of corporate affairs of the Investment Company and of fraudulent conduct in the handling thereof; that the Investment Company had no power to purchase and deal in real estate under its charter; that the long series of transactions and conveyances and reconveyances were fraudulent and ultra vires; and as minority stockholders brought their bill seeking relief against such alleged misconduct and praying for a receiver for the Investment Company, and that an accounting may be had of the acts and doings of the company and the defendants in error.

When Gus H. Bunge handed the memorandum to Morton, secretary of the Investment Company, on August 12, 1930, to make certain transfers of property to his son, George H. Bunge, said transfers amounted to $185,050, which together with a personal credit of $55,000, that was to be given to Gus H. Bunge, made the total of $240,050; and these transfers were to be made in consideration of Gus H. Bunge conveying his equity in the Tivoli Theatre & Hotel Building to the Investment Company. At that time Gus H. Bunge wrote and signed the following letter: ''August 12, 1930. Downers Grove Investment Co., Downers Grove, Illinois. Gentlemen: I have conveyed to you the real property described in the deed attached herewith and was recorded in the Recorder's Office of Du Page

County, Illinois, on August 11, 1930, as document 301,321 in Book 254 of Deeds, page 183, in payment and discharge of any and all obligations which may be due and owing to the said Downers Grove Investment Co., by me, now or hereafter, with express understanding and agreement that if such obligations are fully paid and discharged by me, or some one for me, within Five (5) years from the date hereof, then the said Downers Grove Investment Company, shall, and agrees to convey the premises to whomsoever the undersigned or my son George H. Bunge may in writing direct. (signed G. H. Bunge.)'' Provision is made at the bottom of this letter for the secretary to sign as follows: ''Consented to: Downers Grove Investment Company, by——————— Secretary.'' It appears that the name of V. J. Morton had been written above the title of secretary and stricken out. At the time the above letter was written the said Theatre and Hotel Building had a $200,000 mortgage against it, which mortgage is now in process of foreclosure. It will be observed that Gus H. Bunge undertakes to convey his equity by the terms of this letter, ''in payment and discharge of any and all obligations which may be due and owing to the said Downers Grove Investment Co., by me, now or hereafter, . . .'' It could hardly be presumed that even though there might be a present consideration for such transfer, it could also be in full settlement of all obligations, which might be due and owing both now and hereafter.

The amounts of money paid out by the Investment Company on account of the ''Big House,'' the Mason Real Estate Company, the Lord Lumber Company, the ''Tope House,'' the Masouris note, the Burke Storage Company, the Wabash avenue property in Chicago, the Minnesota farm, George H. Bunge real estate, and Gus H. Bunge open account, total the sum of $187,031.31. The deed executed by Gus H. Bunge and wife to the

Investment Company to the Tivoli Theatre & Hotel property, as it appears in the record, merely describes the lots so conveyed, names the consideration therefor at the sum of $100 and other valuable consideration, and makes said deed subject to all existing leases and to a first mortgage in the sum of $250,000, and to all taxes and assessments. (The said mortgage indebtedness was referred to in the evidence as $200,000.)

The defendants in error made no denial of any of the acts and transactions complained of by plaintiffs in error. Only two witnesses were called by defendants in error, Mr. Gus H. Bunge and Charles Hudson. Their testimony is very brief and is in no way directed toward any of the acts complained of. Defendants in error assume the position that the decree should be affirmed because the bill of complaint is not predicated or based upon insolvency, and the question of insolvency not being the matter to be judicially determined, that a receiver could not be had. We understand the rule to be that the directors of a corporation are regarded as trustees for the stockholders, and that it is unlawful for them to act in opposition to the interest of the stockholders, or place themselves in a position where their individual interests would interfere with their acting for the best interests of all the stockholders; and that this rule applies to all persons acting in any fiduciary capacity. In its general sense, the rule embraces every relation in which there may be any possible conflict between the duty to the person upon whose account the trustee is acting, and his own individual interest.

The directors without the sanction of the stockholders have no power to contract for the corporation with themselves or for the benefit of themselves; and it cannot be said that the directors of a corporation, owning and controlling a majority of the stock shall be permitted to cause their unlawful acts to be ratified by

calling a stockholders' meeting which they control as effectually as they do the board of directors, and then causing a majority of the stock to be voted in favor of such ratification. *Klein v. Independent Brewing Ass'n,* 231 Ill. 594.

The interests of buyer and seller are inconsistent and the directors of a corporation being trustees of its business and property for the collective body of stockholders are subject to the general rule in regard to trusts and trustees in that they cannot in their dealings with corporate property use their relation toward the corporation for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders. The stockholders are entitled to the utmost fidelity on the part of the directors, and it is a breach of duty for the directors to place themselves in a position where their personal interests would prevent them from acting for the best interests of those whom they represent. *Dixmoor Golf Club v. Evans,* 325 Ill. 612; *Gilman, C. & S. R. Co. v. Kelly,* 77 Ill. 426; *Hagerman v. Schulte,* 349 Ill. 11.

We understand that courts of chancery have no general power to appoint receivers of corporations except where expressly authorized by statute, as the State or sovereign does not furnish public agencies for the purpose of carrying on private enterprises; but there are exceptions to this general rule. A stockholder may invoke and set in motion the powers of a court of equity to appoint a receiver where the corporation is fraudulently mismanaged by the officers, whereby it is in imminent danger of insolvency or has been rendered insolvent by reason of such mismanagement. *Blanchard Bro. & Lane v. Gay Co.,* 289 Ill. 413. This rule is recognized in *Steenrod v. Gross Co.,* 334 Ill. 362, 368.

Where it appears that there is fraud or gross mismanagement or wrongful and fraudulent conduct on the part of the directors of a corporation, it is a gen-

eral principle of equity that such misconduct should not be suffered to pass without a remedy, and equity has inherent jurisdiction to appoint a receiver where the circumstances justify it. We do not understand that insolvency is necessary in all cases for the appointment of a receiver. The particular facts of each case should be controlling and if it appears that the directors are guilty of such wrongful waste and dissipation of corporate assets as to constitute fraud and to threaten immediate insolvency and bring about irreparable injury to the stockholders, then a receiver is proper. Where the misconduct is so gross or fraudulent as to threaten corporate security and is attended with such waste and dissipation of corporate assets as to impair corporate solvency and jeopardize the substantial rights of the stockholders in the corporate assets, then such conditions warrant the appointment of a receiver. Under such circumstances, it becomes the duty of the court to see that the property of the corporation is preserved in order to afford the stockholders relief from irreparable loss and injury. 8 Fletcher Cyc. Corporations, sec. 5246. When the mismanagement is evidenced by or accompanied with conversion, misappropriation, or diversion of corporate funds by the officers, a receiver is properly appointed, even though the corporation is solvent, because such conduct is prohibitive to the continuation of solvency, and insolvency becomes imminent and a steadily approaching condition. There is no good reason why a receiver should not be appointed under such circumstances, when in the opinion of the court they clearly appear from the evidence.

The record in this case is large, consisting of nearly 900 pages of pleadings, testimony and exhibits. A statement made in review herein must be limited to such portions as we believe necessary to an understanding of the issues involved, and to a decision of the case. We have examined carefully the evidence pre-

sented and we are compelled to the conclusion that it supports the contention of plaintiffs in error; and that if insolvency has not already overtaken the Investment Company, it is imminent and immediate under the kind of corporate management administered by defendants in error. We cannot agree with contention of counsel, that their irregular acts and conduct, which they make no attempt to explain, were merely honest mistakes of judgment. They go beyond this and constitute such acts and conduct as could not occur except where the directors of the corporation committing such acts owned and controlled a majority of the stock. The evidence in this case shows that the acts and conduct of the defendants in error have been wrongful and fraudulent toward the plaintiffs in error, and that they have produced a condition whereby the plaintiffs in error will suffer irreparable loss and injury if defendants in error are permitted to continue in such conduct of the corporate affairs of the Investment Company.

The trial court erred in its judgment and decree in denying relief to plaintiffs in error for the appointment of a receiver for the Investment Company, and in denying an accounting. The decree is therefore reversed and the cause remanded to the circuit court with directions to that court to enter a decree granting the appointment of a receiver for the Downers Grove Investment Company, and an order for accounting in said case as between the said Downers Grove Investment Company and the other defendants in error, with reference to all of their acts and transactions with the said Downers Grove Investment Company and of all transactions between it, by and through any of its officers, and the defendants in error and each of them; and to refer same to a master to take such accounting of all the acts and doings complained of by the plaintiffs in error regarding the conduct and management of the said Downers Grove Investment Company and

the dealings and transactions between it and the other defendants in error, and each of them; ordering the parties hereto, respectively, for the better discovery of the matters aforesaid, to produce before the master, and to leave with him when directed by the circuit court, all books, records, papers and writings in their custody or under their control, relating thereto; and to be examined upon oath and interrogatories as the master shall direct touching the accounts; and that the master or either of the parties be at liberty to apply to the circuit court of Du Page county for further directions, and that the consideration of costs and of all other matters not herein expressly determined or provided for, be reserved by the said circuit court until after the master shall have made his report.

*Reversed and remanded with directions.*