Benjamin B. Morris, Appellant, v. North Evanston Manor Building Corporation et al., Appellees.

Gen. No. 42,490.

Opinion filed May 5, 1943.

BENJAMIN B. MORRIS, *pro se.*

SHANESY & HOBBS, for certain appellee.

BARRE BLUMENTHAL, for certain other appellees.

NICHOLAS J. MADGEY, for certain other appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In 1926 Anna J. Molter and William H. Molter executed a trust deed securing a bond issue in the sum of $160,000, secured by the real estate located at the northwest corner of Central street and Eastwood avenue, Evanston, Illinois, improved with a three story brick apartment and store building containing 30 apartments and 4 stores. Mr. Benjamin B. Morris purchased bonds of this issue in the sum of $4,000 from the State Bank of Chicago. During 1933 default was made in the payment of interest and the Molters caused to be organized the North Evanston Manor

Building Corporation, with a total of 1,385 shares of capital stock, and conveyed the property to that corporation. Thereafter, all except 120 shares of the stock were turned over to the bondholders in exchange for their bonds, and these 120 shares were turned over to the Molters for their equity of redemption. As a result of the exchange, Mr. Morris received 40 shares of stock. Five directors were elected, namely, Alf. Normann, August Torpe, Jr., John E. Nelson, J. H. Heissler and F. G. Reynolds. In 1936 Mr. Nelson died and Harry Anderson was elected to fill the vacancy. F. G. Reynolds became secretary and treasurer and August Torpe, Jr. became vice president. Mr. Reynolds received $50 a month for his services. During the period from 1933 to 1942 Mr. Torpe, an insurance broker, wrote fire insurance on the premises, the premiums on which amounted to $4,084.83.

Mr. Reynolds, the secretary, treasurer and a director of the corporation, and a licensed real estate broker, endeavored to sell the property, listing it with Quinlan & Tyson, Inc., real estate brokers. This corporation procured a purchaser at a price of $120,000. It was agreed between Reynolds and Quinlan & Tyson, Inc., that the regular real estate board rate of commission on the sale would be paid and that the commission would be divided equally between Reynolds and Quinlan & Tyson, Inc. A special meeting of the shareholders of the corporation was held on February 20, 1942, of which due notice was given. At this meeting the offer of purchase was submitted. Mr. Reynolds disclosed to the shareholders at this meeting that he would receive one half of the commission on the sale. Of the 1,385 shares of stock, the holders of 1,291 shares were present in person or by proxy; 1,251 shares voted in favor of the sale and 40 shares (owned by Mr. Morris) voted against the sale. On February 21, 1942 a real estate contract, embracing the terms of the sale and providing for the payment of the

stipulated commission to Reynolds and Quinlan & Tyson, Inc., was executed. The property was sold and the transaction closed through an escrow, with the Chicago Title & Trust Company, as escrowee. The escrowee paid $2,300 to Mr. Reynolds and a like sum to Quinlan & Tyson, Inc., as commissions, out of the proceeds of the sale.

In an amended complaint in chancery filed in the superior court of Cook county by Benjamin B. Morris against the North Evanston Manor Building Corporation, Alf. Normann, F. G. Reynolds, August Torpe, Jr., J. H. Heissler, Harry Anderson, William H. Molter, Anna J. Molter and Quinlan & Tyson, Inc., a corporation, plaintiff prayed for an accounting of all transactions by Mr. Reynolds with the corporation, and all gains and profits received by him therein; that he be ordered to repay to the corporation the $2,300 received by him as commission; that Quinlan & Tyson, Inc., be ordered to repay to the corporation a like sum received by it as commission; that an accounting be had of all the transactions between August Torpe, Jr. with the corporation; that all profits received by him from such transactions be paid to the corporation; that the stock delivered to the Molters be canceled; that the North Evanston Manor Building Corporation, its directors, officers and agents be enjoined from paying any moneys to the Molters; and that the corporation, its directors, officers and agents be enjoined from taking any steps toward dissolving that corporation. Following the filing of answers and replies the case was referred to a master in chancery, who recommended the dismissal of the amended complaint for want of equity. Objections to the master's report were overruled and permitted to stand as exceptions. These exceptions were in turn overruled by the court and a decree was entered dismissing the amended complaint for want of equity at plaintiff's costs. Mr. Morris prosecutes this appeal.

Plaintiff called to the stand Jules F. Fisher, Frank G. Reynolds, August Torpe, Jr., and William H. Molter. He then rested, whereupon defendants, without introducing any testimony, severally moved for a dismissal of the complaint for want of equity. The master recommended that this motion be sustained, and it was.

The first criticism leveled at the decree is that plaintiff, having made out a *prima facie* case, the court was in error in sustaining the findings of the master. Defendants filed three briefs, one by Reynolds and Torpe, one by the Molters and one by Quinlan & Tyson, Inc. There is no dispute as to the facts. Mr. Reynolds maintains that he made a full disclosure to the shareholders and the board of directors that he was to receive one half of the real estate broker's commission and that the board of directors and shareholders authorized the payment of the commission to him. The sale of the property was made by Mr. Reynolds through Jules F. Fisher, a salesman employed by Quinlan & Tyson, Inc. Mr. Fisher brought the purchasers to Mr. Reynolds. Mr. Fisher knew Mr. Reynolds was the secretary and treasurer and a director of the corporation. Mr. Reynolds was also a trustee for the Boyce estate, with offices at 5 N. Dearborn street, Chicago. His office as secretary and treasurer was in the same quarters as his office as trustee for the Boyce estate. The Boyce estate was the owner of 50 shares of stock in the building corporation and Reynolds voted in favor of the sale on behalf of the Boyce estate, as owners of such stock, as well as on his own behalf and on behalf of such building corporation as a director thereof. The property was listed with the brokerage company by Reynolds in March 1941. In May 1941 Fisher approached those who became the ultimate purchasers with reference to buying the property. Later, he discussed the matter of commissions on the sale with Reynolds, at which time Reynolds knew that Fisher had a prospective purchaser. At the

time Fisher told Reynolds that the commissions would be divided, Fisher knew that Reynolds was representing the corporation in the transaction. Plaintiff cites *Dixmoor Golf Club, Inc. v. Evans,* 325 Ill. 612; *Long v. Wilson Stove & Manufacturing Co.,* 277 Ill. App. 57; *Farwell v. Pyle-National Elec. Headlight Co.,* 289 Ill. 157; *Smith v. Bunge,* 272 Ill. App. 182; *Fritze v. Equitable Building & Loan Society,* 186 Ill. 183; *Phelan v. Hilda Gravel Mining Co.,* 203 Cal. 264, 263 Pac. 520; *Purchase v. Atlantic Safe Deposit & Trust Co.,* 81 N. J. Eq. 344, to the effect that a director of a corporation, being a trustee of its business, cannot without a breach of trust, deal with the subject matter in such a manner as to make a profit for his own benefit, and insists that the commission paid to Reynolds violated this doctrine and should be returned to the corporation. The rule on the subject on dealings between a director or officer of a corporation and the corporation is well stated in Fletcher on Corporations, vol. 3, ch. 11, sec. 931:

"The great weight of authority is that in case of dealings between an interested director or other officer with his corporation, where the corporation is represented by other officers, the transaction is valid and cannot be set aside merely because of the relationship of the parties, where the transaction is not unfair to the corporation and the officers have acted in good faith. But a contract between a corporation and its director, though made on its part by a majority of the board acting for its interests honestly and in good faith, may be set aside for bad faith or unfairness or undue advantage to himself on part of contracting director provided fraud in the making of the contract is sufficiently pleaded and proven."

In *Nowak v. National Car Coupler Co.,* 260 Ill. 260, the Supreme Court said (266):

"The question whether an officer or director of a corporation can deal with it, and if so, to what extent and under what conditions, has been before this court

a number of times, and the general rule to be derived from the decisions is, that a director of a solvent corporation may trade with, borrow money from or loan money to the corporation or purchase its property, but in doing so he must act fairly and be free from all fraud and oppression and must impose no unfair or unreasonable terms.''

The record in this case shows that Reynolds made a full disclosure to the directors and shareholders. He advised them at a special meeting held on February 20, 1942 that he had an offer of $120,000 for the property. The shareholders and directors had full knowledge prior to the acceptance of the offer that one half of the broker's commission was to be paid to Reynolds. With this knowledge, proper resolutions were adopted by the shareholders and directors accepting the offer. There is nothing in the record tending to show that there was any unfairness, fraud, oppression or insufficiency of price. Plaintiff does not contend that the purchase price was insufficient and does not ask that the sale be set aside. We find that the record shows that Reynolds made a full disclosure to the directors and shareholders, that the parties acted in good faith, that there was no unfairness toward or undue advantage taken of the corporation, and that no fraud was committed. Reynolds received $50 per month for acting as secretary and treasurer and for the maintenance of an office for the corporation, which payment was duly authorized by the board of directors. We cannot find that there was anything improper in paying Reynolds this salary.

Turning to the case against August Torpe, Jr., plaintiff points out that this defendant, who was vice president and a director, at the request of the directors took charge of placing the insurance on the building, and that during the period from 1933 until sometime in 1942 he placed such insurance with his own company, August Torpe, Jr. & Company, a corpo-

ration, which corporation received $4,084.83 for premiums. Plaintiff did not seek to introduce any of the corporate records or other evidence to show what particular insurance coverage was placed on the property by Torpe. The master's finding, approved by the court, that no showing was made that Torpe overinsured the property or received excess commissions, is sustained by the record. In *Joy v. Ditto, Inc.*, 356 Ill. 348, the Supreme Court said (355):

"The rule that an officer or a director of a corporation cannot receive compensation unless such is provided by the by-laws or resolution of the board of directors before the services are rendered has an exception now as fully established as the rule (4 Fletcher's Ency. 'Corporations', sec. 2739), that where such officer or director has performed services clearly outside the scope of his duties as such officer or director, at the instance of someone of the corporation having general authority over its affairs and under a promise of payment for such services, he is entitled to receive pay therefor."

Under the circumstances, there was no misconduct or fraud on the part of Torpe, and the chancellor was right in declining to require Torpe to account for profits received from the transactions. Plaintiff urges that he made a *prima facie* case against Quinlan & Tyson, Inc. We have held that the court ruled correctly in dismissing the complaint as to Reynolds. Our views as to the conduct of Reynolds apply with equal force as to the conduct of Quinlan & Tyson, Inc. The transaction whereby the real estate broker's commission was split was fully disclosed to the stockholders and understood by them. We are of the opinion that the court acted properly in dismissing the complaint as to Quinlan & Tyson, Inc. It follows that the action of the court in dismissing the complaint as to the North Evanston Manor Building Corporation, was proper.

Regarding the Molters, the master found and the evidence shows that they conveyed the property to the corporation and received therefor 120 shares out of a total of 1,385 shares. This was for their equity of redemption. There can be no doubt that the transfer of the equity of redemption constituted good and valuable consideration for the deliverance to the Molters of 120 shares of stock. All of the parties recognized that the action of the Molters in conveying their equity in consideration of the 120 shares of stock, thereby avoiding the expense and delay of a foreclosure proceeding, was for the best interests of everyone concerned. We are satisfied that the action of the court in dismissing the complaint as to the Molters was in accordance with the principles of equity. Plaintiff also complains of the action of the master in sustaining objections to questions asked of Reynolds and Torpe. We are of the opinion that the master ruled correctly.

Plaintiff argues that the chancellor erred in denying his motion to set the hearing on the exceptions to the master's report on a day subsequent to the summer vacation recess. In support of his argument plaintiff calls attention to an order entered by the executive committee of the superior court on July 1, 1942. This order provides that the summer recess shall be from July 3, 1942 to September 8, 1942. The second paragraph of the order directs that during the recess period "motions for the entry of decrees . . . shall not be considered excepting where a showing is made satisfactory to the court hearing said matter." The final paragraph of the order provides that three judges shall sit during the recess period, one to hear motions in chancery other than divorce cases, one to hear motions in divorce cases and one to hear motions in law cases. On the same day another order was entered by the executive committee assigning Judge PETER H. SCHWABA to hear chancery cases for the period from July 6, 1942 to July 18, 1942. The decree in

the instant case was entered by Judge SCHWABA on July 10, 1942, during the vacation recess. Before the chancellor considered the exceptions to the master's report, plaintiff moved that hearing on such exceptions be postponed until after the summer vacation recess. This motion was overruled. Plaintiff contends that under the orders of the executive committee the chancellor exceeded his authority and erred in refusing to pass the case until September, and states that the chancellor denied the motion to postpone "without any hearing thereon and immediately signed the decree." The decree recites that the matter came on to be heard on the pleadings, the motions of the defendants to dismiss, the evidence taken, the report and supplemental report of the master, the exceptions thereto, and that the decree was entered "after the arguments of the attorneys for the parties." There is nothing in the record to indicate that the parties were not given an opportunity to argue; in fact, the record states that the decree was entered "after the arguments of the attorneys for the parties." It will be observed that the executive committee order provides that motions for the entry of decrees shall not be considered "except where a showing is made satisfactory to the court." It is clear from the fact that the chancellor entertained the motion for the entry of the decree, that he was satisfied a satisfactory showing had been made for the consideration of such motion at that time. Whether or not the chancellor should hear the motion for the entry of the decree during the vacation recess, was a matter left to his discretion by the order of the executive committee, and the record does not show any abuse of that discretion.

The master in chancery certified that he was entitled to $25.20 for taking and certifying 168 folios of oral testimony at 15¢ per folio, and $4.50 for certifying 30 folios of documentary evidence at 15¢ per folio. Under the heading "Fees to be fixed by court," he asked

$100 for "obtaining files; examining order of reference; docketing cause; setting cause for hearing; attendance at conference and hearing; considering testimony and pleadings; preparing findings of fact and conclusions of law and drawing report." Plaintiff excepted to the request for a fee of $100 on the ground that it was unreasonable and excessive, and complains of the action of the court in allowing this fee. Section 38 of chapter 53, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 48.020], provides that masters in chancery "may receive for examining questions in issue referred to them, and reporting conclusions thereon, . . . such compensation as the court may deem just." In *Fitchburg Steam Engine Co. v. Potter*, 211 Ill. 138, the Supreme Court said (155):

"The parties who are called upon to pay the master should not be required to defend against demands for amounts in gross, but have the right to know the specific service for which they are to be called upon to make payment. The claim of the master should be so itemized as to distinctly show the service which he has rendered for which he claims the right to make a charge. . . . The statute, however, provides that . . . masters in chancery may receive for examining questions of law and fact and reporting conclusions thereon, such compensation as the court may deem just. The claim of the master should therefore show the time he was necessarily employed in the examination of questions of law and fact and in preparing his report of such findings and conclusions, and if the parties who are called upon to pay the demands of the master object to the claim as presented, the master should be required to support his claim with proof, as are other claimants in courts of justice. The proof so produced should show the court the services rendered, the time actually and necessarily devoted by the

master to the work, and such other facts as will enable the court to intelligently determine the rights of the master and the proper obligations of the litigants.''

In *Wirzbicky v. Dranicki*, 235 Ill. 106, 114, where the claim for compensation was stated: ''To hearing arguments and examining questions in issue and reporting conclusions thereon, $200,'' the court said:

''No excuse is suggested for the failure on the part of the master to comply with the requirements of the law as they are indicated in the opinion in that case. [*Fitchburg Steam Engine Co. v. Potter,* 211 Ill. 138.] That opinion was published more than three years ago. Presumably the master is familiar with it. The law as therein set forth should be enforced. In *Gottschalk v. Noyes,* 225 Ill. 94, will be found a statement of a master's claim which was properly itemized. The statement should be so itemized in every case governed by the statute regulating the compensation of masters in counties of the third class. [Cook County.] Where, as in this case, a charge is made by a master in a lump sum, and there is no statement made by the master from which we can ascertain the amount of time he claims was consumed in the performance of each of the duties covered by that charge, we will not in this court enter upon an independent examination of his report for the purpose of attempting to state correctly the items covered by the charge, the time given by the master to each service and the amount that should be allowed on account of each, in order that he may be decreed the sum that could properly have been allowed him had he complied with the law in reference to stating his claim. In such instance nothing will be allowed by us on account of services covered by the gross charge. The master's report, in its length and the manner of its preparation, is properly subject to the same criticisms as was the master's report in

*Manowski v. Stephan*, 233 Ill. 409. Assurances, such as are found in the briefs for appellees, that the chan-. cellor regarded the charge as very reasonable, are without significance. It is to be presumed that the chancellor in every instance regards the amount allowed as reasonable, otherwise he would not decree the payment. The litigants are entitled to our judgment as to the reasonableness of the charge, and the chancellor's conclusion is entitled to no more weight than it would be upon any other proposition of like character."

In *Clokey v. Wabash Ry. Co.*, 353 Ill. 349, the court said (370):
"It is the law that the fees of the master in chancery should be itemized, and if found proper by the court it shall fix such allowance; also, that an allowance of the master in chancery's fees should not be made in gross."

It is apparent that the master's certificate as to the fees to be fixed by the court in the instant case, falls within the quoted criticisms leveled at certificates of masters' fees in comparable factual situations. While in the *Wirzbicky* case the Supreme Court disallowed the fees claimed by the master without remanding the case, we are of the opinion that the Supreme Court intended to leave a discretion in the reviewing court whether to remand or not. It is obvious from the report in the instant case that the master gave considerable time to the matter of examining the questions in issue and reporting his conclusions thereon and that he gave careful consideration to all the propositions raised. Holding these views, the decree of the. superior court of Cook county is affirmed. On May 10, 1943 appellant filed a motion asking that "an order be entered herein amending the opinion rendered herein on May 5, 1943 so that the same will affirm the entire decree appealed from without remanding the cause to

the superior court of Cook county and the order of this court will be final and appealable." Appellant's motion is allowed and the last sentence of the opinion is amended to read: "Holding these views, the decree of the superior court of Cook county is affirmed. Decree affirmed."

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.