**Richard ASH, Sperry Rand Corp., Ginn & Company, Harper & Row, Inc. and Science Research Associates**

**v.**

**INTERNATIONAL BUSINESS MACHINES, INC.**

**Civ. A. No. 35151.**

United States District Court
E. D. Pennsylvania.
Nov. 25, 1964.

Richard Ash, pro se.

Wilbur H. Haines, Jr., and K. Robert Conrad, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case is before the court on defendant's motion to dismiss, as amended (Documents 4 and 5).

Richard Ash, hereinafter called plaintiff, purports to bring this action on behalf of himself and of four corporations which have declined to bring it (Document 1). The sole relief requested is a permanent injunction preventing International Business Machines, Inc. (IBM) from the acquisition of substantially all of the assets of Science Research Associates, Inc. (Old SRA). No motion for preliminary injunction was filed and the transfer of substantially all of the assets to New SRA (a wholly owned subsidiary of IBM) has been completed.

Plaintiff was a stockholder in Old SRA [1] and is presently a stockholder in

Sperry Rand Corp., Ginn & Company and Harper & Row, Inc., in whose behalf he seeks to sue. The Complaint does not allege any breach of trust or negligence on the part of the officers or directors of the above-named corporations.

Plaintiff bases his cause of action on § 16 of the Clayton Act, 15 U.S.C. § 26. The pertinent language of that section states:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18 and 19 of this title, * * *"

Plaintiff alleges a violation of § 7 of the Clayton Act, 15 U.S.C. § 18, as a result of the purchase by IBM of the assets of Old SRA.

The closing of the acquisition was held on February 28, 1964. Plaintiff's Complaint was served upon the manager of the IBM sales office in Philadelphia on February 27, 1964, two days after the stockholders' meeting of Old SRA, voting approval of the acquisition,[2] and one day before the closing of the transaction.

Ash's stock holdings in these corporations, for whom he is suing derivatively, is considerably less than 1%.[3] By bringing a derivative suit, Ash is essentially representing and standing in the shoes of these corporations. In instituting a suit on their behalf, he has undertaken to vindicate in the courts some right which these corporations for some reason have not felt it necessary to enforce. Ash, by letter, warned these three corporations of the impending purchase

---

1. Plaintiff has admitted that his cause of action on behalf of Old SRA is moot (see IV at p. 23 of Document 8).

2. Less than .02 of 1% of the shares represented at the meeting voted against the proposed acquisition (see affidavits attached to Document 5). Defendant also relies on affidavit of September 1, 1964 (Document 7).

3. Plaintiff owns 30 shares of Ginn & Company out of 2,835,575 shares of common stock outstanding as of 12/31/63, 50 shares of Harper and Row, Inc. out of 992,681 shares of comon stock outstanding as of 4/30/63, and 57 shares of Sperry Rand Corp. out of 30,756,029 shares of common stock outstanding as of 3/31/64 (see Document 1).

by IBM of Old SRA and these corporations decided not to sue.

 Ash, as a stockholder in these corporations, votes his stock in the manner that he, as the owner, feels is in his best interests. When the management, which a stockholder elects, makes business decisions, it does so in what it determines to be the best interest of the company. A stockholder must abide by management decisions,[4] unless the management is guilty of a breach of trust or is negligent in the operation of the corporation. To allow stockholders, no matter how large or small their holdings, to dictate management decisions of large corporations would be to permit interference with the internal management of these corporations. Mr. Justice Brandeis stated, in United Copper Sec. Co. v. Amalgamated Copper Co., 244 U.S. 261, 263, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917):

> "Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, * * *"

In Swanson v. Traer, 249 F.2d 854, 859 (7th Cir. 1957), it was stated:

> "A corporation's right not to sue is corrlative to its right to sue. * * * an individual stockholder has no more right to challenge by a derivative suit a decision by the board of directors not to sue than to so challenge any other decision by the board."

This is known as the found business judgment rule. It is based on the presumption that the directors of corporations have a financial and fiduciary interest in their corporations and, therefore, have no reason to protect an outside wrongdoer at the corporation's expense.

 Plaintiff attempts to distinguish the sound business judgment rule elicited above from the instant case by contending, first, that it is grounded on state law and, second, that it has only been applied to derivative suits for money damages. However, the rationale behind the rule is applicable to all derivative suits. Unless the management of a corporation has done an unreasonable act or breached their fiduciary duty, there is no basis for the institution of a derivative suit. In fact, it is arguable that a refusal by the Board of Directors, however unreasonable, should always prevent a derivative suit against a third-party wrongdoer.[5] This would leave plaintiff only a derivative suit against the directors for their negligence in refusing to sue the wrongdoer. At the very least, standing to bring a derivative suit must be based on some misconduct of the board of directors.

 The plaintiff bases his right to a derivative suit on the inference that the passage of § 16 of the Clayton Act was an attempt by Congress to enlist the aid of private forces in antitrust enforcement. Assuming that Congress did intend such an enlistment, it does not follow that Congress intended to enlarge a stockholder's right to bring a derivative suit.[6] To allow stockholders with minor interests to bring large scale antitrust suits, which management has decided should not be instituted, would disrupt both business and the courts.[7]

4. Ballantine, Corporations, § 43.

5. Note, 73 Harv.L.Rev. 746, 760 (1960).

6. Plaintiff cites no case and no legislative history in support of his position, nor could the court find any support for such position. The opinions in cases such as Bateman v. Ford Motor Company, 202 F. Supp. 595, 596–597 (E.D.Pa.1962), and Rogers v. American Can Co., 305 F.2d 297, 318–319 (3rd Cir. 1962), do not support plaintiff's contention when their language is read as a whole.

7. As plaintiff points out, in Gomberg v. Midvale Co., 157 F.Supp. 132, at page 141 (E.D.Pa.1955), Judge Ganey said: "If Fanchon and Marco is the law, and we think it is, it should follow that a stockholder, in a proper case, should be able to bring a derivative action seeking injunctive relief from threatened violations of the antitrust laws."

█ Since the plaintiff has not alleged any facts to show that the boards of directors of these corporations, on whose behalf he seeks to sue derivatively, have gone beyond the bounds of reason in their decision not to sue, and he has not alleged any breach of trust on their part, plaintiff may not bring this action derivatively.

█ Turning to the issue of the plaintiff's right to maintain this action in his own behalf, Ash alleges that the lessening of competition resulting from IBM's acquisition of Old SRA will lead to a decline in the value of his stock in Harper & Row, Ginn & Company, and Sperry Rand. This he alleges is a threatened personal loss which gives him standing to sue individually under § 16 of the Clayton Act. Plaintiff distinguishes the cases where stockholders have not had standing to sue under § 4 of the Clayton Act for treble damages from the instant case, where he seeks an injunction. He reiterates his basic contention that the Congressional purpose in the passage of § 16 is the encouragement of private, preventative, antitrust action.

The threatened loss which plaintiff alleges he will suffer is not a threatened loss to himself, but a threatened loss to the corporations of which he is a stockholder. As plaintiff points out, Judge Ganey did not decide this issue in Gomberg v. Midvale Co., 157 F.Supp. 132 (E.D.Pa.1955), but he did say on this point at p. 141:

> "While this case (General Investment Co. v. New York Central Railroad Co., 6 Cir., 23 F.2d 822) along with Continental Securities and Ashwander cases may suffice as an

Although a stockholder may, under proper circumstances, bring a derivative action enforcing antitrust laws, there is no allegation in this Complaint of misconduct by the officers or directors of the

> answer to the right of the stockholder suing in his own right,
> * * * "

These cases cited by Judge Ganey and the Hillman case, infra, do answer the question of plaintiff's right to maintain this action in his own behalf. In Continental Securities Co. v. Michigan Cent. R. Co., 16 F.2d 378, at 379, (6th Cir. 1926), the court said:

> " * * * the favor of section 16 extends only to injunctive relief to be given to 'any person * * * against threatened loss or damage.' This is not appropriate language to reach such a suit as this, in which a stockholder files a representative suit, and apprehends no 'threatened loss or damage' save that which comes through the damage to his corporation."

In General Investment Co. v. New York Central Railroad Co., 23 F.2d 822 (6th Cir. 1928), the court relied on Continental Securities, supra, holding that § 16 does not extend to a stockholder's suit because the threatened loss does not flow directly to the stockholder. Lastly, in National Supply Co. v. Hillman, 57 F. Supp. 4, at page 8 (W.D.Pa.1944), the court stated:

> "He (the plaintiff) has shown no special damages to himself which would qualify him to sue. He cannot sue under Section 16 of the Clayton Act for an injury to the plaintiff company."

On the basis of the above authorities, plaintiff has no standing to bring this suit on his own behalf under § 16 of the Clayton Act on this record. Under these circumstances, the defendant's Motion (Documents 4 and 5) will be granted.[8]

corporations in whose behalf plaintiff is suing.

8. It is not necessary to consider the other matters ably argued by the defendant.