MAE WOOL *et al.*, Plaintiffs-Appellants, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.—(EUGENE J. O'RILEY, SR., *et al.*, Intervenors.)

First District (2nd Division)  No. 79-1863

Opinion filed October 7, 1980.

Joseph J. LaRocco and John B. LaRocco, both of Chicago, for appellants Margaret Axelrod and Harry Axelrod.

Joseph Stein, of Chicago (Rothbart, Stein & Moran, of counsel), for other appellants.

Kenneth C. Prince and Leonard A. Nelson, both of Chicago (Prince, Schoenberg, Fisher & Newman, Ltd., of counsel), for appellees.

Herbert L. Hart, of Chicago, for appellee, *pro se*.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This class action suit was filed by representative members of the class of owners of the beneficial interests in two apartment buildings located at 860-880 North Lake Shore Drive, Chicago, against the corporate trustee (La Salle) and the managing trustees (trustees) of the property. The complaint asked the trial court, among other things, to invalidate and amend the provisions of the trust agreement concerning the manner of appointment of the trustees, and to invalidate the method in which their number and compensation were determined. After the trial court certified the case as a class action, several beneficial owners, including appellants Margaret and Harry Axelrod (the Axelrods), exercised their statutory right to be excluded from the action. Later in the case, the new trustees, elected pursuant to an agreed order between the parties entered by the trial court, petitioned for instructions as to their duties concerning

possible legal action against their predecessors. The trial court allowed service of process to be made upon the excluded members of the class, and then instructed the trustees not to proceed against the prior trustees. Independently, the class members petitioned the court for attorney's fees, which were denied. This court is presented with two separate appeals: (1) the appeal of the class members (hereinafter Wool) from the denial of attorney's fees, and (2) the appeal of the Axelrods from the entry of the order instructing the trustees. One of the class members, Herbert Hart (Hart), has intervened as an appellee in the Wool appeal.

The issues presented on the separate appeals will be set forth below in the discussion of each appeal. The statement of facts will be consolidated below for the sake of brevity.

In 1949, real estate developers built two 26-story apartment buildings at 860-880 North Lake Shore Drive and conveyed the property in trust to the Trust Co. of Chicago. La Salle is the successor corporate trustee. The beneficial interest in the property was sold by way of "certificates of beneficial interest" to a presently unknown number of beneficiaries. The trust agreement provided that trustees were to have charge of the day-to-day management of the buildings. As originally written, the agreement provided that the trustees were to be self-appointed.

In January 1977, Wool (a beneficial interest owner) filed this class action suit to have the trustees provision of the trust instrument modified. As alleged in her brief, Wool and others were unhappy with the manner in which the trustees were carrying out their functions.

After the complaint was filed, the trustees moved for dismissal. The trial court denied the motion, the trustees appealed, and this court dismissed the interlocutory appeal for want of jurisdiction.

In the interim, Wool, who had been the sole class representative, was granted leave to add 12 additional persons as named members of the representative group.

The action proceeded through various preliminary negotiation stages after dismissal of the interlocutory appeal. On February 28, 1978, the trial court entered an agreed settlement order between the parties. The order certified the case as a class action, invalidated the trust agreement provision on the appointment of the trustees, and set up the machinery for election of new trustees. The order also allowed for the filing of objections after notice by, among others, the unnamed beneficial owners.

Objections and comments were received, and a second order was entered March 28, 1978, which refined the election procedure and granted exclusion requests of the Axelrods, Hart, and several other beneficiaries. Nevertheless, the Axelrods and Hart continued to appear regularly and actively in the proceedings.

In April 1978, five new trustees were elected pursuant to the agreed

orders' plans. Wool, meanwhile, filed a petition for attorney's fees as provided for in the March 28 order. The trustees opposed this petition. Hearings on the petition were held at irregular intervals over the next 12 months, and the petition was finally denied on May 31, 1979. From this ruling, Wool appeals.

During the period in which the attorney's fee petition was pending, the trustees filed with the trial court a petition for instructions, requesting to be advised as to their duties with respect to proceeding against their predecessors. The court gave leave to the trustees to have process served upon those individuals who had previously opted out of the principal action. After oral argument, the trial court instructed the trustees not to take any legal action against their predecessors. From the assertion of jurisdiction over them and from this ruling, the Axelrods appeal.

## I. THE WOOL APPEAL

Wool urges that the trial court erred in denying her petition for attorney's fees to be paid from the trust corpus. She contends: (1) that equity allows for such an award when suit is filed which seeks construction of a trust agreement due to an honest difference of opinion of those concerned, (2) that equity allows attorney's fees to those who confer benefits upon the trust through legal action, and (3) that the principles of class actions allow such an award when the representative of the class confers benefits upon the entire class through legal action.

### A.

Wool argues that an alleged "honest difference of opinion" existed between the beneficiaries and the managing trustees as to the manner of selecting new trustees and created the need for this suit to "construe" the trust instrument, and that equity allows fee awards in such instances.

■■ The general rule in this State is that attorney's fees are not awarded in the absence of a statute or some agreement or stipulation to the contrary. (*House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 51-52, 245 N.E.2d 468.) An exception to this rule has evolved in equity suits seeking construction of a will or trust agreement when there is an honest difference of opinion as to the meaning of the maker's language in the instrument. (*Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 165, 183 N.E.2d 505.) Wool asserts that this exception is applicable to the case at bar, and cites several decisions allegedly in support thereof.

*In re Estate of Reeve* (1946), 393 Ill. 272, 65 N.E.2d 815, involved construction of ambiguous provisions in a will which left the estate's executor unsure of how the testator intended his realty to be devised. Three other cases cited by Wool, *Northern Trust Co. v. Continental Illinois National Bank & Trust Co.* (1976), 43 Ill. App. 3d 169, 356 N.E.2d

1049, *modified sub nom. Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262; *Rosenthal v. First National Bank* (1970), 127 Ill. App. 2d 371, 262 N.E.2d 262; and *St. Louis Union Trust Co. v. Hearne* (1969), 111 Ill. App. 2d 411, 250 N.E.2d 674, were actions instituted to construe ambiguous provisions of wills creating testamentary trusts. Two final cases, *Continental Illinois National Bank & Trust Co. v. Phelps* (N.D. Ill. 1975), 392 F. Supp. 313, and *State Bank & Trust Co. v. Park Ridge School for Girls* (1962), 34 Ill. App. 2d 396, 181 N.E.2d 204, involved suits to construe the provisions of instruments creating *inter vivos* trusts, where ambiguities rendered the administration of those entities unclear.

■■ Each of these cases, unlike the case at bar, contained written provisions which did not clearly spell out the duties or rights of those affected, necessitating court construction (*i.e.*, interpretation). Here, on the other hand, the trust agreement was admittedly precise in its provisions concerning the manner of appointment of the trustees. Wool admits as much in her briefs to this court when she states that her aim in filing suit was to have the provision declared void and replaced. Thus, despite Wool's protests to the contrary, it does not appear that this suit involves the type of "construction" undertaken in the cases cited. The exception to the general attorney's fees rule is thus not on point and cannot serve as the basis for a fee award.

### B.

Wool contends that her actions have benefited the trust, and that expenses (including attorney's fees) incident thereto are allowable.

The general rule is that expenses incident to the preservation of a trust or for the benefit thereof are properly chargeable against and reimbursable from the trust estate. (*Brown v. Commercial National Bank* (1968), 94 Ill. App. 2d 273, 280, 237 N.E.2d 567, *aff'd* (1969), 42 Ill. 2d 365, 247 N.E.2d 894.) Wool asks this court to find such a benefit to have been conferred in this case: the alleged "clear benefit" which the owner-beneficiaries now have in being able to directly elect the trustees.

We believe that the substitution of a "democratic" election process for an "autocratic" election process is not the type of benefit envisioned in the *Brown* rule. Elucidation of what became the *Brown* rule, found in earlier cases, indicates that the focus is whether there has been a successful suit which saves a trust from destruction (*State Life Insurance Co. v. Board of Education* (1948), 401 Ill. 252, 258, 81 N.E.2d 877), or which preserves, protects, and increases a common fund or property or creates a fund from which others may share (*Wechter v. Chicago Title & Trust Co.* (1947), 330 Ill. App. 614, 71 N.E.2d 924 (abstract)). The crux of

these cases appears to be that the trust as an entity is protected or increased in tangible form, either monetarily or with property.

■■ Here, the "benefit," if any, has been conferred upon the beneficiaries, and not the trust. There is only an abstract impact: in Wool's words, the "substantial and valuable" right of the beneficiaries to indirectly control their property by directly controlling the election of those who manage it. While Wool makes numerous references to various statements made in court about the "benefits" derived from this action, we do not perceive that these off-hand remarks demonstrate the tangible impact we believe *Brown* requires.[1] We conclude that the *Brown* criterion for awarding attorney's fees has not been met in this case.

## C.

Wool contends that she and the other named class representatives have conferred a benefit upon all members of the class of beneficial owners of the property in question through this class action, thus entitling them to reimbursement for attorney's fees.

An exception to the general rule which denies any award of fees is found in class action proceedings where a fund has been brought within the control of the court by the parties to the action. (*Hamer v. Kirk* (1976), 64 Ill. 2d 434, 442-43, 356 N.E.2d 524, citing *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1.) This "fund doctrine" is an equitable concept which allows an attorney who has rendered a service in creating a fund to be compensated out of the fund by those who have directly benefited by its accumulation. (*Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 130, 378 N.E.2d 762, *rev'd on other grounds* (1979), 77 Ill. 2d 93, 395 N.E.2d 541.) While the language of the cases applying this doctrine is not always consistent, it appears that what is envisioned is a fund created by the class action for the benefit of the class, or a fund preserved through the results of the class action. (See *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Kaplan v. Mahin* (1979), 79 Ill. App. 3d 848, 399 N.E.2d 315.) In any case, it is a prerequisite that the fund be within the control of the court as a result of the action. *Hamer v. Kirk*; *Flynn v. Kucharski* (1973), 16 Ill. App. 3d 624, 627, 306 N.E.2d 726, *modified* (1974), 59 Ill. 2d 61.

Wool asserts that this equitable doctrine is applicable in the present case, offering that the large operating expense fund of the property suffices to meet the doctrine's requirements. We disagree. Initially, we

---

[1] We also note that the trust agreement as originally written provided for a "recall" option by which the beneficial owners could remove and replace a trustee by means of petitions signed by 66 2/3% of the owners. The presence of this term weakens further Wool's contention that a benefit resulted from the substituted direct election procedure.

note that this operating fund is collected through regular assessments of the beneficial owners. It has been in existence since the creation of the trust. Thus, the Wool class action has not "created" this fund, nor have the class members "benefited" by the existence of the fund in the sense that that term is used in the cases cited above. The fund existed prior to this action, and will certainly continue to exist and be replenished long after this case is terminated.

Further, we do not perceive that this action has "preserved" the fund as envisioned in the cases adopting the fund doctrine. Wool made various allegations throughout the course of the proceedings below concerning alleged misdealings of the self-appointed trustees which allegedly adversely affected the fund. However, no substantive proof of these allegations appears in the record, and the settlement orders adopted by the trial court contain no indication that the claims were accepted as fact. We do not deem the record to adequately prove the substance of these allegations, and thus cannot hold that this action has resulted in any "preservation" of the fund as required for a fee award under the doctrine.

■■ Finally, we have doubts as to whether the necessary benefit accruing to the class has resulted from this action. As noted above, the insertion in the trust agreement of a democratic election process for the trustees is at best an abstract form of benefit. Whether that benefit is in fact seen as being such by the class members is, as noted by La Salle, put in doubt in light of the fact that about 25 percent of the class members thought the suit lacked sufficient benefit that they sought to opt out of the action. In sum, the facts of this case preclude our use of the fund doctrine as a basis for an award of attorney's fees.[2]

In light of this determination, it becomes unnecessary for us to assess Wool's contention that the trial court was predisposed to deny the fee award. Since Wool is not entitled to fees on the basis of any exception to the general rule, any such predisposition, if it did exist, would constitute harmless error.

### D.

Class member Hart has filed a brief with this court as an appellee, but was not present at oral argument before this court.[3] Hart argues on appeal that Wool's relationship to the class attorney (she is his mother-in-law)

---

[2] Wool cites several U.S. Supreme Court and lower Federal court decisions in support of her contention here, including *Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 24 L. Ed. 2d 593, 90 S. Ct. 616; and *Yablonski v. United Mine Workers of America* (D.C. Cir. 1972), 466 F.2d 424. These cases were decided under the Federal statutory law, and are thus not controlling here. (*Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 380-81, 146 N.E.2d 42.) Rather, Wool must meet the requirements of *Hamer, et al.*, if she is to succeed in recovering fees on the basis of this exception.

[3] Since none of the parties on appeal appeared to be concerned with the validity of Hart's appearance in opposition to the "party" of which he is a member, we shall take no action upon this fact other than to note it.

requires the latter's disqualification from consideration for attorney's fees. While we have ruled that attorney's fees are not available in this case, we nonetheless take this opportunity to address this issue.

Our supreme court has adopted a per se rule requiring that an attorney be barred from serving as counsel for the class in a class action if he is also the sole named class representative. (*Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 384 N.E.2d 316.) Hart would have us apply this rule to the circumstances of the present case by expanding the scope of the excluded relationship. In support of this argument, he cites several Federal cases which are in fact broader than the *Barliant* holding.[4]

■■ We note that the present facts do not fall within those facts found in *Barliant*. Here, the attorney is not the sole class representative; rather, there are 13 named representatives, one of whom happens to be the mother-in-law of the class counsel. Case law in Illinois has not expanded the *Barliant* exclusion rule to encompass such facts, and we are not inclined to so act. Hart's reliance upon the cited Federal decisions is of no consequence to our decision since those cases were decided under the Federal class action rule and are thus not binding upon this court. (*Ray Schools-Chicago-Inc. v. Cummins*, cited above at footnote 2.) It is our decision that the rule of *Barliant* should be restricted to the facts of that case, and that this contention of Hart therefore lacks merit.

## II. THE AXELROD APPEAL

The appeal brought by the Axelrods focuses upon the propriety of the trial court's ruling on the petition for instructions filed by the trustees during the proceedings below. The Axelrods maintain (1) that the trial court lacked jurisdiction over them in the action below once it granted their request to be excluded, (2) they are therefore not bound by the orders entered granting the petition for instructions, (3) the court should not have ruled upon the petition in any event because the requisite genuine dilemma was lacking, and (4) the ruling of the trial court that the trustees need not institute legal action was erroneous.

In response, appellee La Salle contends that the Axelrods' appeal was filed late and should be dismissed.

In order for this court to have jurisdiction over a case, notice of appeal, generally, must be filed within 30 days of entry of the final judgment appealed from, or, if a *timely* post-trial motion is filed, within 30 days after entry of the order disposing of the motion. (Ill. Rev. Stat.

---

[4] Hart cites *Susman v. Lincoln American Corp.* (7th Cir. 1977), 561 F.2d 86 (mother, brother, and close associate of class counsel as class representatives); *Stull v. Pool* (S.D.N.Y. 1974), 63 F.R.D. 702 (wife of member of counsel's law firm as class representative); *Kriger v. European Health Spa, Inc.* (E.D. Wis. 1972), 56 F.R.D. 104 (associate of class counsel as class representative).

1979, ch. 110A, par. 303(a); *Stewart v. Stewart* (1975), 35 Ill. App. 3d 236, 238, 341 N.E.2d 136.) In a nonjury case such as this, a post-trial motion, to be timely, must be filed within 30 days after entry of the judgment. Ill. Rev. Stat. 1979, ch. 110, par. 68.3.

■■ Generally, when a final judgment as to fewer than all the claims in an action is entered, appeal may be taken as to that judgment alone only if the trial court makes an express written finding that there is no just reason for delaying appeal. The time for filing the notice of appeal commences upon entry of the finding. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) In providing for appeal under Rule 304(a), no express provision has been made for the stay of the time for filing the notice of appeal by means of a post-trial motion, as is provided under Rule 303(a). While the issue is unsettled, a reading of Rule 304(a) in conjunction with Rule 303(a) and section 68.3 would seem to indicate that a post-trial motion be filed within 30 days of entry of the judgment itself, and not within 30 days of the finding of appealability. In other words, if the finding of appealability under Rule 304(a) is entered more than 30 days after entry of the judgment, an appealing party would be unable to take advantage of the stay provision of Rule 303(a).

In this case, the Axelrods appeal from the trial court's order entered June 6, 1979. Since the order did not finally decide every claim pending, appeal from it could be made only upon entry of a Rule 304(a) finding by the trial court. The trial court entered such a finding on June 20, 1979. Therefore, the Axelrods were given 30 days from that date, or until July 20, to appeal the June 6 judgment.

Instead of filing a notice of appeal within that time period, the Axelrods filed a motion to vacate on July 20, 1979. They contend that this motion resulted, under Rule 303(a), in staying the time to appeal until 30 days after the trial court's ruling on the motion.

■■ This contention finds no support in the applicable law. Clearly, Rule 303(a) controls the time for filing an appeal, even if the appeal is taken pursuant to entry of a Rule 304(a) finding. Logically, then, the stay provision of Rule 303(a) provided by filing of a timely post-trial motion should also be available for an appeal filed under Rule 304(a). However, section 68.3 defines a timely post-trial motion as one filed within 30 days of entry of *judgment*. There is no distinction made in that section as to what is timely between judgments disposing of an entire case (Rule 303(a) appeals) and judgments as to fewer than all claims (Rule 304(a) appeals). Therefore, to take advantage of the stay provision of Rule 303(a) in this case, it was imperative that the Axelrods file their post-trial motion by July 6, 1979, 30 days after entry of the judgment the motion attacks.[5] In

---

[5] If the post-trial motion under section 68.3 is not filed within 30 days and the court does not extend that time explicitly, it has no jurisdiction to rule upon it. *City of DeKalb v. Anderson* (1974), 22 Ill. App. 3d 40, 43, 316 N.E.2d 653.

lieu of using the stay provision, it was mandatory that the Axelrods file their notice of appeal by July 20, 1979, 30 days after entry of the Rule 304(a) finding of appealability. Neither of these deadlines were met, and therefore the Axelrods' appeal of the June 6 judgment is untimely and must be dismissed.

■■ The Axelrods also appeal the court's denial of their motion to vacate. As noted above, this motion was not timely filed. Consequently, the trial court had no jurisdiction, the motion was of no effect, and the trial court's ruling thereupon was a nullity. Thus, the entire appeal of the Axelrods must be dismissed.

For the foregoing reasons, the trial court's denial of attorney's fees is affirmed. The Axelrod appeal is dismissed as untimely filed.

Affirmed; Axelrod appeal dismissed.

PERLIN, P. J., and STAMOS, J., concur.