HARRY AXELROD *et al.*, Plaintiffs-Appellants, v. N. A. "JIM" GIAMBALVO *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 83—2733

Opinion filed December 11, 1984.

Joseph J. LaRocco and Ronald V. Hirst, both of LaRocco, Baker & Hirst, of Chicago, for appellants.

Leonard A. Nelson, of Schoenberg, Fisher & Newman, Ltd., of Chicago, for appellee Donald E. Jeffers.

Sidney Z. Karasik, of Chicago, for other appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, Harry and Margaret B. Axelrod, are owners of a certificate of beneficial interest in the 860 Lake Shore Drive Trust (Trust). The Trust holds title to two 26-story cooperative apartment buildings located at 860-880 North Lake Shore Drive, in Chicago. As certificate holders among some 268 others, they were entitled to, and did, lease an apartment in one of the buildings. Responsibility for managing the Trust under the trust agreement is vested in a board of five managing trustees who, since 1978, have been elected to those positions by the certificate holders (beneficiaries). The managing trustees are required to be certificate holders and tenants of the building under the trust agreement. The present litigation commenced on March 15, 1979, when plaintiffs sued as defendants the corporate trustee, La Salle National Bank, and managing trustees of the Trust, alleging numerous breaches of trust in an amended 21-count complaint seeking a variety of forms of relief including money damages, injunctive relief, and construction and modification of the trust agreement against separate defendants in both their individual and official capacities. Each count alleged facts substantially distinct from the facts of the other counts. Each count ran through several pages, plus many pages of exhibits. Further amendments were filed after judgment.

Some counts were ruled upon pursuant to motions to strike, some upon motion for summary judgment, and one was decided after an eight-day trial. All issues were decided against plaintiffs. Plaintiffs appeal, raising as issues whether: certain counts were erroneously stricken and dismissed; the circuit court's grant of summary judgment for defendants on counts VI and XXI was appropriate; and the circuit

court's decision in defendants' favor on count XX was contrary to the manifest weight of the evidence. The dismissal of counts filed against the corporate trustee bank has not been argued on appeal.

Certain common threads can be identified in the various legal theories presented. They may be placed in three categories, namely: (1) charges of a derivative nature which sought relief against individual defendants based on their former status as managing trustees of the Trust; (2) charges of a derivative nature which sought relief against individual defendants personally for the asserted benefit of the Trust; and (3) one nonderivative count which sought relief against the individual defendants for the individual benefit of plaintiffs.

The Trust was the subject of related litigation in 1977, when a class action was filed by beneficial owners against the corporate trustee and the managing trustees. Certain beneficiaries, including plaintiffs here, opted out of the class. Nevertheless, the Axelrods continued to appear regularly and actively in the proceedings. (*Wool v. La Salle National Bank* (1980), 89 Ill. App. 3d 560, 562, 411 N.E.2d 1135.) During the course of the 1977 action, a new board of managing trustees was elected, who are defendants in the instant case. This new board petitioned the circuit court for instructions as to whether they should pursue any legal claims against their predecessors. In that case, Wool v. La Salle National Bank (Cir. Ct. Cook Cty., June 6, 1979), No. 77 CH 483, the circuit court issued an order prohibiting the new board from instituting such legal action against the predecessor managing trustees. That order was appealed to this court by certain beneficiaries. Plaintiffs here, the Axelrods, also filed an appeal which was dismissed as untimely filed, and the circuit court order was not disturbed. *Wool v. La Salle National Bank* (1980), 89 Ill. App. 3d 560, 411 N.E.2d 1135.

On May 1, 1980, still another new slate of managing trustees, also tenants-owners of the Trust, as are plaintiffs and defendants, assumed office on behalf of the Trust. As a result of this change, none of the previously elected (1977) defendants remained in office. There is no claim in the record of any personal financial benefit accruing to these successor managing trustees as a result of a favorable outcome for defendants in this lawsuit, bad faith or abuse of discretion on their part. On September 4, 1981, after various derivative counts had been stricken and dismissed, the successor managing trustees submitted an affidavit to the circuit court, which formed a basis for defendants' motion for summary judgment on two of three remaining counts. This affidavit, in part, states as follows:

"1. We are the duly elected managing trustees of the 860

Lake Shore Drive Trust, and we are all managing trustees presently in office.

2. In connection with this litigation, we support all motions made and positions taken by the defendants. We oppose all motions made and positions taken by plaintiffs, except as the same may be agreed to by defendants.

3. We believe that termination of this lawsuit with judgment entered on all counts in favor of defendants is in the best interests of the Trust, for the following reasons:

\* \* \*

b. This lawsuit has been a disruption to the Trust's orderly procedure. Plaintiffs' counsel have interrupted the normal routine of the building office to investigate documents. Defendants' counsel must confer with the La Salle National Bank, the building manager, and with the managing trustees about this case. They must review and sign affidavits. All of this takes time and effort for everyone concerned.

c. Even if plaintiffs should, by some remote chance, be successful in this case, the benefits which might be achieved for the Trust could not possibly compensate for the time and expense of litigation.

d. The publicity attendant upon this case can continue to diminish the value of the Trust and of the tenant/owners' equity. Some people may be reluctant to purchase an apartment in a building where the managers are the subject of litigation.

e. Most important of all, the present managing trustees wish to encourage certificate holders to run for the office of managing trustee. Particularly in light of the fact that the managing trustees receive no pay for their efforts, they do not want obstacles placed in the path of those who have volunteered to serve the Trust. They want to keep a difficult job from being even more onerous. They definitely do not want certificate holders to be dissuaded from running for office through fear that dissident tenant/owners might bring marginal or frivolous lawsuits against them."

Summary judgment on counts VI and XXI was thereafter granted. Following an eight-day trial, judgment for defendants on count XX was also entered. This appeal followed.

## I

Plaintiffs assert that the circuit court improperly struck and dis-

missed counts I through V and VII through XIX of their second amended complaint for failing to state causes of action. These counts included charges of a derivative nature based both upon defendants' former positions as managing trustees of the Trust and against them personally for the asserted benefit of the Trust.

Among the reasons given by the circuit court for its decision was that sections 4.01—4.07 of the trust agreement delegated to the managing trustees broad authority to make decisions in managing the business of the Trust and at the same time expressly limited their liability by virtue of the provisions of section 4.10 of the trust agreement. That section, in part, provides:

> "Neither the Managing Trustees nor the Trustee shall be liable for errors of judgment in exercising any of the powers or discretions conferred hereby, nor for failure to sue for or collect any money or property belonging to the Trust, nor for any act or omission to act performed or omitted by the Managing Trustees ***, nor for the acts of any agent selected in good faith and with reasonable care. *** The Managing Trustees *** shall be fully protected in respect of any action under this agreement taken or suffered by the Managing Trustees *** in accordance with the opinion of counsel and in acting upon any resolution, vote, declaration, request, demand, order, notice, waiver, appointment, consent, certificate, affidavit or statement, or upon any other paper or document believed to be genuine."

Notwithstanding the language contained in section 4.10, plaintiffs maintain that exculpatory clauses such as the foregoing should be read strictly and given no effect, relying upon *Browning v. Fidelity Trust Co.* (3d Cir. 1918), 250 F. 321, and *New England Trust Co. v. Paine* (1945), 317 Mass. 542, 59 N.E.2d 263. Plaintiffs also cite *Countiss v. Whiting* (1940), 306 Ill. App. 548, 29 N.E.2d 277, in which the appellate court refused to give effect to a similar exculpatory clause under the facts there presented. The cases cited involved exceptional circumstances including contraventions of public policy, instances of bad faith and intentionally committed breaches and acts performed in reckless indifference to the welfare of the beneficiaries. In contrast, the alleged wrongful acts articulated in various counts of plaintiffs' amended complaint in this case do not rise to the level of exceptional circumstances related in the cases cited.

A brief description of the contents of the derivative counts in the present complaint suffice for consideration of this argument. In two of the counts, plaintiffs unilaterally sought modification by the circuit

court of the trust agreement, as well as modification of the amendment process provided in the trust agreement itself. Five counts complained of technical violations of the trust agreement. One count claimed that defendants breached a contract entered into by the predecessor managing trustees. Dismissal of three counts are not even challenged by plaintiffs. Other counts complained of failure to properly supervise an employee, and failure to provide, maintain and publish minutes of trustees' meetings. In none of the derivative counts did plaintiffs effectively plead abuse of discretion, gross negligence, bad faith or fraud with regard to defendants' alleged omissions or commissions.

■■■ Although exculpatory provisions such as section 4.10 of the trust agreement do not enjoy special favor in the law, if they are inserted in a trust instrument they are generally held effective except as to breaches of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary. (*Perling v. Citizens & Southern National Bank* (1983), 250 Ga. 674, 300 S.E.2d 649; *Jarvis v. Boatmen's National Bank* (Mo. 1972), 478 S.W.2d 266; *Sullivan v. Mosner* (1972), 266 Md. 479, 295 A.2d 482; *Jewett v. Capital National Bank* (Tex. Civ. App. 1981), 618 S.W.2d 109; *Dill v. Boston Safe Deposit & Trust Co.* (1961), 343 Mass. 97, 100, 175 N.E.2d 911, 913, and cases therein cited; Restatement (Second) of Trusts sec. 222 (1959); 3 Scott, Trusts secs. 222-222.4 (3d ed. 1967); Bogert, Trusts & Trustees sec. 542 (2d ed. rev. 1978).) In Illinois, language expressly exempting or exculpating a trustee from personal liability, if contained in the instrument creating the trust, has also been recognized. (*Kelley v. Astor Investors, Inc.* (1984), 123 Ill. App. 3d 593, 598, 462 N.E.2d 996; *First National Bank v. Edgeworth* (1981), 94 Ill. App. 3d 873, 882, 419 N.E.2d 372; *Burns v. Hines* (1939), 298 Ill. App. 563, 592-93, 19 N.E.2d 382. See also *Piff v. Berresheim* (1950), 405 Ill. 617, 622, 92 N.E.2d 113.) In purchasing their interest in the Trust, plaintiffs impliedly acquiesced in the exculpation set forth in section 4.10. (*Kelley v. Astor Investors, Inc.* (1984), 123 Ill. App. 3d 593, 599.) In light of that express exculpation provided in section 4.10 and the broad powers delegated to managing trustees in the trust agreement, the circuit court properly struck and dismissed the derivative counts of plaintiffs' second amended complaint.

■■ Also to be noted is that counts VII, IX, X, XIII and XVII, purporting to state causes of action in breach of trust stemming from defendants' failure to seek an accounting from their predecessors and to bring suit against them for various breaches of the trust, were the subject of a circuit court order in *Wool v. La Salle National Bank*

(Cir. Ct. Cook Cty., June 6, 1979), No. 77 CH 4873. That order directed defendants in the instant case not to sue their predecessors on the above-stated grounds. Nevertheless, plaintiffs assert that this order does not pose a *res judicata* bar to the instant cause, claiming that they did not have a full and fair opportunity to be heard in *Wool.* The appellate opinion in *Wool* noted that although plaintiffs opted out of the class action, the Axelrods "continued to appear regularly and actively in the proceedings." (*Wool v. La Salle National Bank* (1980), 89 Ill. App. 3d 560, 562.) Plaintiffs in fact appealed the circuit court's ruling in *Wool,* but that separate appeal was dismissed by this court as untimely. (*Wool v. La Salle National Bank* (1980), 89 Ill. App. 3d 560.) Plaintiffs participated in the *Wool* litigation to the extent they followed the rules; they were bound by that order. (See *Skolnik v. Petella* (1941), 376 Ill. 500, 505, 34 N.E.2d 825.) The decision of the circuit court striking and dismissing those counts was proper on the grounds of *res judicata* as well.

## II

■ The election of the successor managing trustees and the filing of the managing trustees' affidavit of September 4, 1981, gave rise to two related legal theories of defendants: (1) that plaintiffs no longer had standing to represent the Trust in a derivative action, a theory rejected by the circuit court; and (2) that the real party in interest in the derivative claims, the Trust, had ratified defendants' actions, a theory accepted by that court. Under either theory, the circuit court's ultimate decision was correct.

Paragraphs 3.01 and 3.02 of the trust agreement specify that the certificate holders, such as plaintiffs, have no direct legal title to any trust property. Their interest in the Trust, therefore, is purely derivative. The trust agreement also provides that the managing trustees, alone, are empowered to represent the Trust, which includes the right to bring lawsuits on behalf of the Trust. Among the relevant provisions is paragraph 4.01, in part providing:

> "The Managing Trustees shall also have full right and power *** to compromise, settle, abandon or adjust any actions, suits, proceedings, disputes, claims, demands or things related to the Trust."

Further, paragraph 7.02 of the trust agreement provides:

> "The Managing Trustees are authorized and empowered to construe this Trust Agreement and their construction made in good faith shall be conclusive and final upon the Certificate Holders and upon all of the parties hereto."

The affidavit filed by the successor trustees announcing their decision to terminate the present lawsuit was an exercise of this power. In the absence of any claim in the record that the successor managing trustees acted other than in absolute good faith, their determination to conclude the litigation is binding on plaintiffs.

Our conclusion that plaintiffs have no standing to maintain the present suit is supported by Restatement (Second) of Trusts sec. 282 (1959). That section provides:

> "Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the property free of trust, the beneficiary cannot maintain a suit in equity against the third person ***."

Comment (e) to this section explains:

> "If the trustee does not commit a breach of trust in failing to bring an action against the third person, as for example where it is prudent under the circumstances to refrain from bringing an action ***, the beneficiary cannot maintain a suit against the trustee and the third person."

Since the individual defendants were no longer in office at the time of the motion for summary judgment, they stood as such third persons in their relationship to the Trust. The successor managing trustees sought to exercise prudent business judgment and were entitled to terminate the lawsuit, to the extent that it was brought derivatively on behalf of the Trust.

An analogy may be drawn to the rights of disinterested directors of a corporation to determine the best interests of the corporation in derivative litigation, where the decision that it is not in the corporation's best interests to maintain the suit has been upheld as sufficient grounds for terminating the litigation. See, *e.g., Auerbach v. Bennett* (1979), 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994; *Abramowitz v. Posner* (2d Cir. 1982), 672 F.2d 1025; *Lewis v. Anderson* (9th Cir. 1979), 615 F.2d 778; *Abbey v. Control Data Corp.* (8th Cir. 1979), 603 F.2d 724, *cert. denied* (1980), 444 U.S. 1017, 62 L. Ed. 2d 647, 100 S. Ct. 670; *Cohen v. Ayers* (7th Cir. 1979), 596 F.2d 733; *Mills v. Esmark, Inc.* (N.D. Ill. 1982), 544 F. Supp. 1275; *Rosengarten v. International Telephone & Telegraph Corp.* (S.D.N.Y. 1979), 466 F. Supp. 817; *Zapata Corp. v. Maldonado* (Del. 1981), 430 A.2d 779. See also *Burks v. Lasker* (1979), 441 U.S. 471, 60 L. Ed. 2d 404, 99 S. Ct. 1831.

In *Ash v. International Business Machines, Inc.* (E.D. Pa. 1964), 236 F. Supp. 218, 220, *cert. denied* (1966), 384 U.S. 927, 16 L. Ed. 2d 531, 86 S. Ct. 1446, the court found that the right not to sue corre-

lates to the right to sue. To maintain suit on behalf of the corporation, an individual shareholder must allege and prove an equitable basis for such intervention, and a shareholder is no more entitled to challenge by a derivative suit a decision by the directors not to sue than to so challenge any other decision by the board.

As stated in *Auerbach v. Bennett* (1979), 47 N.Y.2d 619, 633, 419 N.Y.S.2d 920, 928, 393 N.E.2d 994, 1002:

> "[T]o disqualify the entire board would be to render the corporation powerless to make an effective business judgment with respect to prosecution of the derivative action. *** To assign responsibility of the dimension here involved to individuals wholly separate and apart from the board of directors would, except in the most extraordinary circumstances, itself be an act of default and breach of the nondelegable fiduciary duty owed by the members of the board to the corporation and to its shareholders, employees and creditors. For the courts to preside over such determinations would similarly work an ouster of the board's fundamental responsibility and authority for corporate management."

In the controversy before us, the Trust operates through elected managing trustees, rather than through hundreds of separate certificate holders. The certificate holders elected them to make the judgments necessary to carry on the business interests and affairs of the Trust. These successor managing trustees have decided that further maintenance of the lawsuit was not in the best interests of the Trust as a whole. The circuit court accepted that decision by granting the motion for summary judgment.[1] We affirm.

---

[1]An examination of the summary judgments entered by the circuit court demonstrates the correctness of the circuit court's rulings thereon for other reasons as well. Plaintiffs contend that count VI, dealing with an allegedly illegal expenditure of $14,000 for light bulbs, should not have been disposed of by summary judgment because of the presence of genuine issues of fact. They assert that the light bulb transaction (count VI) constituted a variety of breaches of defendant trustees' fiduciary duties, in that the purchase of an excessive number of light bulbs constituted a clear breach of trust which raised the factual issue of whether defendants acted carefully, prudently and diligently. Defendants' motion for summary judgment as to this count was supported by the affidavits of two trustees who averred that the request to purchase the bulbs came from the building manager; that the bulbs were to have been of exceptional quality and low price; that the building was low on bulbs; and that the trustees simply exercised a business judgment. No countervailing affidavits were filed by plaintiffs; therefore, the material facts set forth in defendants' affidavits were admitted. *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 425 N.E.2d 1055; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810.

With respect to count XXI, dealing with the purchase of air vents, plaintiffs

## III

We turn next to the application of the doctrine of ratification to the summary judgment proceedings as an alternate ground for affirmance. Ratification may take place through an express statement or may be implied through conduct. Bogert, Trusts & Trustees sec. 942 (2d ed. rev. 1982).

■ The successor managing trustees' submission of their affidavits was an express ratification, a power recognized in *Wichita Royalty Co. v. City National Bank* (5th Cir. 1940), 109 F.2d 299, *cert. denied* (1940), 310 U.S. 644, 84 L. Ed. 1411, 60 S. Ct. 1097 (*Wichita*), and in Bogert, Trusts & Trustees sec. 942, at 464 (2d ed. rev. 1982), which states that "[a] successor trustee may act for the beneficiary in ratifying an act of a predecessor trustee." In *Wichita*, a trustee made an unauthorized investment for the trust there involved. A successor trustee was substituted for him. This successor trustee, having been fully informed of the questionable actions of his predecessor, as here, accepted trust ownership of the property, together with certain encumbrances placed upon the property. The beneficiary and the successor trustee later attempted to avoid payment of mortgage notes and further sought relief against the predecessor trustees. The *Wichita* court held that the successor trustee's adoption of his predecessor's acts barred any relief for either the beneficiary or successor trustee. Both were bound by the acts of the predecessor even though contrary to the trust agreement. Although the action in *Wichita* was commenced by the bank against the successor trustee on a note, whereas here the action was begun by beneficiaries, no significant difference exists in applying the doctrine of ratification in this case, since the

---

maintain that summary judgment was also inappropriate because the purchase violated both a provision in the Trust Agreement prohibiting trustee self-dealing, and the fundamental duty of loyalty imposed on trustees of all trusts. (2 Scott, Trusts sec. 170, at 1297 (3d ed. 1967).) Further, plaintiffs note that the circuit court's initial entry of summary judgment in their favor against defendant Kyts indicates a finding of breach of trust. That finding was subsequently vacated by the circuit court. Defendants admit that there was a technical violation of the trust agreement in this transaction; however, they maintain that the transaction was not claimed to have been unfair. The vents were retained and used in the building. Because defendant Kyts had allegedly invented, manufactured and distributed the vents, he was alleged to have had a conflict of interest. Three other managing trustees who voted to purchase the vents did not. This disinterested majority had the power to approve the transaction, making it valid and binding. *Morris v. North Evanston Manor Building Corp.* (1943), 319 Ill. App. 298, 49 N.E.2d 646; *Bunker Hill Country Club v. McElhatton* (1935), 282 Ill. App. 221.

beneficiary ultimately objected to the conduct of the former trustee in both instances. Here, the successor managing trustees exercised power delegated to them by the trust agreement to speak for all beneficiaries and to administer the Trust according to their best business judgment, in this case, to ratify the actions of the defendants. The circuit court's finding to that effect was correct and must be affirmed.[2]

## IV

Plaintiffs' final argument is that the circuit court's decision for defendants on count XX, after an eight-day trial, was contrary to law and against the weight of evidence. This count alleges that defendants maliciously delayed plaintiffs' obtaining a certificate of beneficial interest in the Trust as tenants in common. Plaintiffs maintain that defendant Jeffers unilaterally revoked the trustees' acceptance of a plan to transfer the certificate to plaintiffs as tenants in common. This unilateral revocation is construed by plaintiffs to violate the trust agreement provision requiring three trustees to take such action. Further, plaintiffs seek to impose liability on Jeffers' co-trustees for this alleged breach.

The evidence reveals that certificates of beneficial interest may be transferred only upon approval in writing by the managing trustees. When plaintiffs first requested such transfer in December 1978, it was to have effectuated transfer from Mrs. Axelrod to her husband and herself as *joint tenants*. This transfer was approved by the managing trustees and certificates forwarded to the corporate trustee, La Salle National Bank, in January 1979. In that same month, January 1979, Mrs. Axelrod executed a different assignment form which requested transfer of her certificate of beneficial interest from herself to her attorney and the attorney executed an assignment from himself to plaintiffs, this time as *equal tenants in common*. These forms were sent by the attorney directly to the bank rather than to the managing trustees for approval as required by the trust agreement. In March 1979, the bank sent the forms to the building manager for approval by the managing trustees, who had just previously approved transfer from Mrs. Axelrod to plaintiffs as *joint tenants*. In April

---

[2]Although the ratification affidavit was filed in support of the motion for summary judgment after certain of the derivative counts were stricken and dismissed for insufficiency, had it been filed in support of a section 2—619(a)(9) (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9)) motion as setting forth affirmative matter avoiding the legal effects of or defeating the claims contained in the derivative counts, the circuit court might well have been justified in dismissing those counts upon the basis of ratification as well.

1979, a bank officer wrote directly to trustee Jeffers, seeking clarification, but making no mention of the transfer to plaintiffs' attorney as a "straw man."[3] A newly employed building manager then sent a formal request for transfer of Mrs. Axelrod's beneficial interest from her name only to plaintiffs as *tenants in common,* with no mention of the interceding straw man transfer desired by plaintiffs. The managing trustees approved the request, and the approvals were forwarded to the bank in April 1979.

In May 1979, a bank officer called one managing trustee's attention to the straw man aspect of the intended transfer. That trustee, Jeffers, who was one of the three approving the transfer, advised the bank officer that, since a transfer to one not a building resident would be required, he was unsure of the authority to approve such a procedure without the managing trustees acting as a board and would check with the trustee's attorney. Jeffers contacted the attorney, who advised that no such transfer could be effected without approval of the board of managing trustees. Meanwhile, the bank officer, in May 1979, returned plaintiff's request to transfer to plaintiffs' attorney, stating that the straw man transfer was not authorized by the board of managing trustees, but that a transfer directly from Mrs. Axelrod to plaintiffs as tenants in common would be. Plaintiffs' amended complaint, filed in December 1979, asked for a mandatory injunction to effect the transfer to plaintiffs as tenants in common.

In response to a letter from one of plaintiffs' attorneys, one of defendants' attorneys advised that the documents had been forwarded to the bank "with directions to complete the transfer as you requested." In February 1980, the bank issued the requested certificates. Nevertheless, in August 1980, plaintiffs filed a second amended complaint, among other things, seeking to have Mrs. Axelrod's certificate of beneficial interest transferred to plaintiffs as tenants in common through the use of a straw man. In a pretrial conference in April 1982, in chambers, however, plaintiffs' attorney *no longer sought a straw man transfer, but for the first time demanded reissuance of the certificates of beneficial interest in the properties not equally, but*

---

[3]The necessity for "straw man" transfers had been abolished 26 years before then (Ill. Rev. Stat. 1953, ch. 76, pars. 1(b), 2.1), even if the transfer had involved realty (see *Minonk State Bank v. Grassman* (1982), 103 Ill. App. 3d 1106, 432 N.E.2d 386, *aff'd* (1983), 95 Ill. 2d 392); however, under section 3.01 of the trust agreement, a certificate of beneficial interest is personalty. Interestingly, the historic use of a straw man in such transfers was to preclude joint tenancy estates from being considered as tenancies in common. (*Deslauriers v. Senesac* (1928), 331 Ill. 437, 163 N.E. 327.) Here plaintiffs' express intent was to create a tenancy in common.

showing a 99% beneficial ownership in Mrs. Axelrod and 1% in her husband. After on-going discussions, the managing trustees agreed to do so, by letter dated August 30, 1982. Notwithstanding this agreement, plaintiffs filed a third amendment to count XX, seeking mandatory relief to compel the managing trustees to do what they had previously agreed to do, this amendment being filed in December 1982.

In May 1983, Mr. Axelrod and his attorney appeared at defendants' attorney's office for deposition, bringing with them completed forms for assignment of the certificates of beneficial interest from plaintiffs to plaintiffs' attorney's secretary, with a form reassigning the certificates to plaintiffs as tenants in common, 99% interest in Mrs. Axelrod and 1% interest in her husband. Irrespective of the assignments presented, however, plaintiffs' attorney now requested that the bank issue the certificates directly to plaintiffs without issuance thereof first to his secretary. The certificates were reissued as most recently requested in May 1983, to the satisfaction of plaintiffs, both as to form and substance, as one of plaintiffs testified in July 1983. Yet, in September 1983, plaintiffs filed their fourth amendment to count XX, claiming that Jeffers countermanded approval by the board of managing trustees, which authorized transfer of the certificates of beneficial interest through a straw man to plaintiffs. Not surprisingly, the circuit court resolved the issue for defendants.

The rather lengthy discourse of the evidence set forth above demonstrates most eloquently and with great force the frivolous, wasteful and needless expense of this litigation, despite actual transfers made and willingness to make other transfers of plaintiffs' beneficial interests by the board of managing trustees. Moreover, the history of events in the claims set forth in count XX are in character with many of the derivative claims made by plaintiffs. We find no error.

This litigation has been overly extended, arduous, tedious and exceedingly hard fought. In evaluating the wisdom of the successor trustees to put an end to this seemingly interminable controversy, the words of another court, used in a different context, are appropriate here as well. Mr. Justice Ulysses S. Schwartz, in *Payne v. Pullman Co.* (1957), 13 Ill. App. 2d 105, 119, 141 N.E.2d 83, stated in part:

> "Eminent jurists and lawyers at times have felt that no misfortune, short of smallpox or hydrophobia, is greater than involvement in serious litigation. The long delays, the cumbersome machinery, and the great expense combine to make our judicial system the subject of bitter denunciation. To hold that this should be the resort to which a plaintiff could go for a fresh start after an adverse finding in a plan of arbitrament which

provides for a hearing and two appeals would be piling Ossa on Pelion. Even those of us who have faith in our profession and its ability ultimately to solve the problems which beset it must realize that laymen have ample justification for seeking to avoid becoming enmeshed in its toils."

For the foregoing reasons, the judgment of the circuit court was correct. Accordingly, we must affirm.

Affirmed.

DOWNING* and PERLIN, JJ., concur.

---

*Justice Downing participated in the decision of the above-captioned case before the expiration of his term in office.